UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LUKE NGUYEN,

     Plaintiff,

v.                            Case No.: 3:21-cv-00173-MMH-MCR

UNIVERSITY OF ST. AUGUSTINE
FOR HEALTH SCIENCES, LLC,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, University of St. Augustine for Health Sciences, LLC ("USA" or the "University") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 56, for final summary judgment as to all counts in Plaintiff's Complaint.

## I.    STATEMENT OF FACTS

Plaintiff, Luke Nguyen, matriculated in USA's Doctor of Physical Therapy program ("DPT Program") in Summer 2016.[1] Nguyen initially enrolled in USA's on-campus "accelerated" DPT Program. During his enrollment, Nguyen signed an Essential Function for Occupational and Physical Therapy form (the "Form").[2] The Form provided detailed information regarding USA's policy for requesting disability accommodations.[3] In the Form, Nguyen certified that he could "meet all of the

---

[1] May 19, 2022 Deposition of Luke Phuoc Nguyen ("Nguyen Depo") at 16-17.
[2] Nguyen Depo. at 18-20, Exh. 1, USA/Nguyen 000013-000015.
[3] Nguyen Depo. Exh. 1, USA/Nguyen 000013.

{00409774 1 }

Essential Functions [of the DPT Program] . . ." including the "[a]bility to perform in stressful environments or during impending deadlines" and the ability to "[c]omplete timed written, oral, and laboratory practical examinations."[4]

### A.      Nguyen's leave of absence and program transfer

Despite passing all of his Summer 2016 courses with grades ranging from A's to a C+, Nguyen struggled during the Fall 2016 semester.[5] Nguyen testified that on or about September 11, 2016, he had a panic attack and requested a two-week emergency leave of absence, which USA approved.[6] In September 2016, Nguyen received mental health treatment and was diagnosed with generalized anxiety disorder ("GAD") and attention deficit hyperactivity disorder ("ADHD").[7] On September 20, 2016, Nguyen sought a leave of absence for the Fall 2016 semester, which was approved.[8]

On November 1, 2016, Nguyen requested to transfer from the DPT Program to the Flex DPT Program, effective January 2017, because it would provide him with a reduced course load.[9] USA approved the transfer so, when Nguyen returned to USA in January 2017, he was enrolled in USA's Flex DPT program.[10] Nguyen testified that in Fall 2016 the only accommodation he requested was a reduced course load via a transfer to the Flex DPT Program.[11]  Nguyen admits that he did not contact USA's

---

[4] Nguyen Depo. at 20, Exh. 1, USA/Nguyen 000014-000015.
[5] Nguyen Depo. at 19, Exh. 2.
[6] Nguyen Depo. at 23.
[7] Nguyen Depo. at 25-26.
[8] Nguyen Depo. at 23, Exh. 2, Exh. 3.
[9] Nguyen Depo. at 27, Exh. 6.
[10] Nguyen Depo. at 33.
[11] Nguyen Depo. at 29-30, 33.

disability services or request any accommodations during Spring or Fall 2017.[12]

**B.    Nguyen begins to struggle academically but does not request accommodations**

Nguyen adequately performed in Spring, Summer, and Fall 2017 and did not request any accommodations, although at times he raised concerns with his professors about his ability to perform during practical examinations due to his GAD, and it was recommended that he study more to gain confidence in his abilities.[13]

During Spring 2018, Nguyen failed his midterm examination in Musculoskeletal I, attributing his failure to "unfair testing conditions."[14] Nguyen testified that, prior to his first retake of the midterm exam, he met with Dr. Debra Gray, Flex DPT Program Director, and Dr. Kempfert to discuss his remediation plan and he requested but was denied use of a paper and pen for the retake examination.[15]

Nguyen was approved to retake the midterm but failed it because, according to Nguyen, he ran out of time and did not complete the exam.[16] Nguyen testified that he discussed his failure with Dr. Wicinski, who administered the exam, and he "mentioned" his ADHD and GAD.[17] In response, Dr. Wicinski gave the same advice that Nguyen received from other professors, to "practice more" so that he would be "confident in his knowledge."[18] Following the second failure of the midterm, Nguyen

---

[12] Nguyen Depo. at 39,41.
[13] Nguyen Depo. at 38-39.
[14] Nguyen Depo. at 44, 49.
[15] Nguyen Depo. at 55-56.
[16] Nguyen Depo. at 49.
[17] Nguyen Depo. at 49.
[18] Nguyen Depo. at 49.

submitted a remediation plan, but did not mention his alleged disability.[19] Nguyen requested and was approved to retake the exam for a second time and passed.[20]

In Spring 2018, Nguyen also had to retake a practical exam in General Therapeutic Exercise.[21] The day before his retake, Nguyen asked Dr. Wicinski for feedback regarding his performance and for advice on the exam, but Nguyen did not mention his ADHD or GAD.[22] Dr. Wicinski responded, offering suggestions and advice for Nguyen to improve his performance.[23] Nguyen passed the retake exam.[24]

Despite Nguyen ultimately passing General Therapeutic Exercise, Dr. Wicinski expressed concerns to Nguyen about his academic performance.[25] Dr. Wicinski was concerned about Nguyen's lack of foundational knowledge, which she believed would cause him difficulty in future courses.[26] Nguyen agreed with Dr. Wicinski and said that he was "unsatisfied" with his academic performance.[27] Nguyen testified that, while he "reminded" his professors of his "learning disabilities," he did not request any accommodations from USA's disability services for Spring or Summer 2018.[28]

## C.    Nguyen fails the Musculoskeletal II: Mock Clinic midterm

During Fall 2018, one of the courses in which Nguyen was enrolled was

---

[19] Nguyen Depo. Exh. 8.
[20] Nguyen Depo. at 54.
[21] Nguyen Depo. at 60.
[22] Nguyen Depo. Exh. 12.
[23] Nguyen Depo. Exh. 12.
[24] Nguyen Depo. at 62.
[25] Nguyen Depo. Exh. 13.
[26] Nguyen Depo. Exh. 13.
[27] Nguyen Depo. Exh. 13.
[28] Nguyen Depo. at 63-64. In Summer 2018, Nguyen took Child Development, Neuromuscular I: Concepts and Evaluation, Therapeutic Exercise II, and Physical Therapist Practice and earned an A, B, C+, and B+, respectively. Nguyen Depo. at 63.

Musculoskeletal II: Mock Clinic ("Mock Clinic") with Dr. Wicinski and he earned an F in the course.[29] Mock Clinic was a cumulative course consisting of unit assignments worth 15%, a midterm worth 25%, and a final exam worth 60% (made up of a practical worth 30% and a Plan of Care worth 30%) of the final course grade.[30]

For the Mock Clinic midterm, students performed a practical examination and then prepared written documents based on information obtained during the practical.[31] Nguyen failed the midterm, earning 29%.[32]  Nguyen claims that he failed the midterm because he misunderstood the testing instructions.[33] The Mock Clinic midterm was not considered a "practical examination" because only the written portion was graded. Therefore, pursuant to USA's policy, which only allows for retakes of practical examinations, Nguyen was not permitted to retake the exam.[34]

### D.   Nguyen's mental health issues

On or about November 30, 2018, Nguyen had a panic attack.[35] Nguyen consulted with his healthcare provider, then emailed Dr. Wicinski and requested to reschedule his Mock Clinic examination.[36] On December 6, 2018, Nguyen contacted Dr. Wicinski and informed her that he was "ok to continue with school" and that he planned to explore the option of time and a half for future exams.[37]  Nguyen also said

---

[29] Nguyen Depo. at 64-65, Exh. 2.
[30] Nguyen Depo., Exh. 14.
[31] Nguyen at 68-69.
[32] Nguyen Depo. at 69-70, 71; August 7, 2022 Declaration of Dr. Wicinski ("Wicinski Decl.") at 3.
[33] Nguyen Depo. 69.
[34] Wicinski Decl. at 3.
[35] Nguyen Depo. at 75, Exh. 17.
[36] Nguyen Depo. Exh. 15, 17.
[37] Nguyen Depo. Exh. 18.

that he intended to "research USA's requirements [for receiving time and a half] and get back to his [psychiatrist]."[38] Pursuant to his request to postpone his exam, Nguyen's Mock Clinic final exam was rescheduled for December 8, 2018.[39] Prior to the rescheduled final exam, Nguyen did *not* request any accommodations for an alleged disability.[40]  Nguyen took his Mock Clinic final exam on December 8, 2018.[41]

### E.    Nguyen fails the Musculoskeletal II: Mock Clinic final exam

The Mock Clinic final exam included a practical portion, which is a physical evaluation of a hypothetical patient, and a written documentation portion, called a "Plan of Care."[42]  The Plan of Care is a case study in which the student is required to document, summarize, and evaluate the hypothetical patient's recovery plan.[43] A student must score at least 80% on each section, which is separately scored, to pass the exam.[44] If a student fails either section, the student automatically fails the course.[45]

Nguyen testified that he received a grade of 76% on the practical portion of the Mock Clinic final but he actually received a 74%.[46] Nguyen claims that, after he finished the first part, he had a panic attack and was not able to complete the Plan of Care.[47] Nguyen left the exam room to inform Drs. Gray and Wicinski of his panic

---

[38] Nguyen Depo. at 83, Exh. 18.
[39] Nguyen Depo. Exh. 19.
[40] Nguyen Depo. at 83-84.
[41] Nguyen Depo. at 85.
[42] Nguyen Depo. at 85, Exh. 14; Wicinski Decl. at 3-4.
[43] Wicinski Decl. at 3-4.
[44] Nguyen Depo. at 86, Exh. 14.
[45] Nguyen Depo. Exh. 14; Wicinski Decl. at 45.
[46] Nguyen Depo. at 86; Wicinski Decl. at 5, Exh. C.
[47] Nguyen Depo. at 86.

attack, but Nguyen was unable to recall details of his conversation with them.[48] According to Dr. Wicinski, Nguyen elected not to write the Plan of Care because he was aware he had already failed the first part of the final.[49] Because Nguyen received a 74% on the practical portion and did not complete the Plan of Care, Nguyen failed the final.[50] As a result, Nguyen earned a final grade of "F" in Mock Clinic.[51]

### F.    Nguyen contacts USA's disability services

Nguyen contacted USA's disabilities services, for the first time, after failing his Mock Clinic final exam.[52] On December 10, 2018, Nguyen contacted Ryan Davis, USA's Student Affairs and Disability Services Manager, about seeking disability accommodation, and Davis provided Nguyen with information about what he would need to submit to request accommodations, including providing Nguyen the required forms.[53] It is undisputed that Nguyen never returned the accommodation forms.[54]

Nguyen testified that, on December 18, 2018, he asked Drs. Gray and Wicinski if he could complete the Plan of Care portion of the Mock Clinic final exam that he took on December 8, 2018.[55] Nguyen admitted he never requested to *retake* the Mock Clinic final exam; instead, his only request was to complete the exam.[56] Nguyen

---

[48] Nguyen Depo. at 88-90.
[49] Wicinski Decl. at 5, Exh. C.
[50] Nguyen Depo. at 90.
[51] Nguyen Depo. at 123, Exh. 2.
[52] Nguyen Depo. at 91, 93.
[53] Nguyen Depo. at 92, 94, Exh. 22.
[54] Nguyen Depo. at 108-109.
[55] Nguyen Depo. at 104-106, 111, 151.
[56] Nguyen Depo. at 108, 151. Nguyen testified that in December 2018, he believed that he needed an 80% on the Mock Clinic final to pass the course. Nguyen Depo. at 91. However, at his deposition, Nguyen claimed that he only needed at 75% on the final exam. Nguyen Depo. at 102-103. Nguyen is

appears to assert that this request was a request for reasonable accommodations.

### G.    Nguyen appeals his midterm grade

Also, on December 18th, following the Mock Clinic final, Nguyen appealed his Mock Clinic midterm exam grade, which was denied.[57]  Nguyen has never claimed that his ADHD or GAD caused him to fail his Mock Clinic midterm.[58]

### H.    Nguyen is dismissed from USA's Flex DPT Program

On December 21, 2018, consistent with USA's policies, Nguyen was dismissed from USA's Flex DPT Program after failing his Mock Clinic.[59]  Nguyen appealed his dismissal to the Academic Appeals Committee ("AAC") and to Dr. Gray.[60]  The AAC met regarding Nguyen's appeal on January 10, 2019, and Nguyen attended via telephone.[61]  Nguyen testified that during the January 10th meeting, the AAC was clear that they were reviewing his appeal as it pertained to his failure of Mock Clinic.[62]  Nguyen told the AAC that he had been working on his mental health and felt more stabilized.[63]  Nguyen also told the AAC that he was on anti-anxiety medication that was recently tripled, that he had been under the supervision of a psychiatrist, and that he felt as though his GAD was under better care and better management.[64]  Finally,

---

incorrect. Nguyen scored 29% on the midterm and received 65.5% on his assignments, so he needed an 87.4% on the final exam to pass the course. Wicinski Decl. at 5; Nguyen Depo., Exh. 14.

[57] Nguyen Depo. at 116, Exh. 25, Exh. 27.

[58] Nguyen Depo. Exh. 25.

[59] Nguyen Depo. at 126, Exh. 30. USA's Dismissal policy states, "[a] student will be dismissed from the program if an F is received in any course. Nguyen Depo., Exh. 36 at KAL000200.

[60] Nguyen Depo. at 126, Exh. 36 at KAL000189 and KAL000200.

[61] Nguyen Depo. at 130, Exh. 36 at KAL000190.

[62] Nguyen Depo. at 131.

[63] Nguyen Depo. at 131.

[64] Nguyen Depo. at 132.

Nguyen told the AAC that he had ongoing conversations with the disability office and was working to "get the ball rolling" on accommodations.[65] AAC records reveal that Nguyen stated that "he chose not to complete the plan of care [on his Mock Clinic final] due to not having enough points to pass the course."[66]

Nguyen testified that he told the AAC about the grade appeal for his midterm, and the AAC asked him how he was aware that he misunderstood the testing procedures.[67] Nguyen admitted that, after he found out about his dismissal from the program, he discussed his midterm exam with a fellow classmate.[68] Nguyen further admitted to the AAC that he knew his discussion about the exam was "a testing security concern."[69] Nguyen's admitted violation of USA's Academic Integrity Policy was concerning to the AAC.[70]

On January 14, 2019, the AAC unanimously recommended denying Nguyen's appeal based on "concerns regarding [his] academic performance, professional behaviors, and academic integrity."[71] Specifically, the AAC found:

- Concerns based on display of decreased self-awareness, professional integrity, and academic integrity based on behaviors related to this dismissal.
- Downward trend in academic performance from term to term demonstrating a pattern of being provided with information and advice but not being actionable to make meaningful change in performance.
- Concern for emotional dysregulation as reported in the academic appeal report of argumentative behavior, thus demonstrating unprofessionalism.

---

[65] Nguyen Depo. at 136.
[66] August 9, 2022 Declaration of Lindsay Perry ("Perry Decl.") at 2, Exh. B. This is consistent with Dr. Wicinski's recollection of her discussion with Nguyen at the time of the exam.
[67] Nguyen Depo. at 132.
[68] Nguyen Depo. at 132-133.
[69] Nguyen Depo. at 133.
[70] Perry Decl. Exh. A; Exh. B.
[71] Nguyen Depo. Exh. 33; Perry Decl. Exh. A, Exh. B.

- Lack of immediate accepting of responsibility of his own performance leading to dismissal, rather described factors that contributed to the experience.
- Lack of seeking clarification when misunderstanding directions, thus making decisions on assumptions, thus demonstrating lack of proactive and resourceful behaviors.[72]

On January 14, 2019, USA informed Nguyen that his appeal of dismissal was denied.[73]

## II.    MEMORANDUM OF LAW

In the Complaint, Nguyen asserts five causes of action, and summary judgment should be granted in USA's favor on all of them.

### A. Summary Judgment should be granted for USA on Plaintiff's claims under the Rehabilitation Act (Count II) and Title III of the ADA (Count I)

In Counts I and II, Nguyen alleges that he was subject to disability discrimination when USA failed to accommodate his disabilities (ADHD and GAD) and dismissed him from the Flex DPT Program.[74]  As an initial matter, it is difficult to determine from the allegations in the Complaint if Nguyen alleges both disparate treatment and failure to accommodate claims, therefore, USA will address both.[75] Nguyen seems to claim that USA discriminated against him by dismissing him from the Flex DPT Program and failed to accommodate him by not initiating the reasonable accommodation process and not permitting him to finish the written portion of his December 8, 2018 final examination weeks later.[76]  The Americans with Disabilities

---

[72] Perry Decl. at Exh. A; Exh. B.

[73] Nguyen Depo. Exh. 33.

[74] (Doc. 1) Complaint at 7-12. For the purposes of this Motion, USA does not address whether Nguyen has a disability as defined by the ADA and Rehabilitation Act. Notwithstanding, USA does not waive its right to assert that Nguyen does not have a disability as defined by the law in other stages of this litigation.

[75] See (Doc. 1) Complaint.

[76] See (Doc. 1) Complaint; Nguyen Depo. at 104-106, 111.

Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehab Act") are construed in the same manner for both disparate treatment and failure to accommodate claims. *Goldberg v. Fla. Int'l Univ.*, 838 Fed. Appx. 487, 492 (11th Cir. 2020); *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010).[77]

### 1. Disparate Treatment under the Rehab Act and the ADA

"In the absence of direct evidence, a plaintiff may prove disparate treatment in disability cases through circumstantial evidence using the familiar burden-shifting analysis employed in Title VII employment discrimination cases."   *Monaco v. City of Jacksonville*, 51 F. Supp. 3d 1251, 1258 (M.D. Fla. 2014). "Under this framework, the plaintiff must establish a *prima facie* case of discrimination . . . . "  *Iaciofano v. Sch. Bd. of Broward Cty., Fla.*, No. 16-CV-60963, 2017 WL 564368, at *4 (S.D. Fla. Feb. 13, 2017). To establish a prima facie case, a plaintiff must prove that he "(1) is disabled, (2) is a qualified individual, and (3) was subject to unlawful discrimination because of [his] disability."  *Meisenhelder v. Florida Coastal Sch. of Law, Inc.*, No. 3:09-CV-0074-HES-TEM, 2010 WL 2028089, at *3 (M.D. Fla. Feb. 19, 2010).

"The defendant must then offer legitimate, nondiscriminatory reasons for the action to rebut the presumption. If the defendant successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual."  *Iaciofano*, 2017 WL 564368 at *4. "[A]

---

[77] To the extent Plaintiff seeks to recover damages under Title III of the ADA, there is no private cause of action for damages and summary judgment should be granted on this issue in USA's favor. *See Hirsch v. Nova Se. Univ.*, No. 04-60068-CIV, 2005 WL 8165239, at *2 (S.D. Fla. May 6, 2005).

plaintiff can show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason for the . . . action that a reasonable factfinder could find them unworthy of credence." *Thomas v. Dolgencorp, LLC*, 645 Fed. Appx. 948, 951 (11th Cir. 2016). "In order to survive summary judgment, Plaintiff must present evidence of a 'discriminatory intent' or 'animus' such that a reasonable jury could determine that [he] was 'singled out for disadvantage because of [his] disability.'" *Iaciofano*, 2017 WL 564368 at *4.

### 2. Failure to accommodate under the Rehab Act and the ADA

To establish a claim for failure to accommodate, a plaintiff must prove "(1) he was disabled, (2) he was otherwise qualified, and (3) a reasonable accommodation was not provided." *Datto v. Fla. Int'l Univ. Bd. of Tr.*, No. 1:20-cv-20360-BLOOM/Louis, 2020 WL 3963713, at *9 (S.D. Fla. July 13, 2020). "A reasonable accommodation is one that enables the individual to meet and perform the technical standards at the postsecondary institution." *Datto v. Univ. of Central Fla. Bd. of Tr.*, No. 6:19-cv-1456-Orl-41EJK, 2021 WL 2792135, at *6 (M.D. Fla. Feb. 5, 2021). A plaintiff is not entitled to the accommodation of [his] choice, but only to a reasonable accommodation. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). "Importantly, the law does not require that [USA] grant every accommodation requested by an individual; rather [USA] need only provide accommodations that are reasonable. *Meisenhelder*, 2010 WL 2028089, at *4.

"The plaintiff bears the burden of identifying a reasonable accommodation" and the burden of proving that what is requested was a reasonable accommodation.

*Goldberg,* 838 Fed. Appx at 492; *Wilf v. Bd. of Regents of the Univ. System of Ga.*, No. 1:09-cv-01877-RLV-GGB, 2012 WL 12888680, at *18 (N.D. Ga. Oct. 15, 2012). When an accommodation is requested, "[t]he school is required to consider the request and make a reasoned decision to grant or deny it." *Wilf,* 2012 WL 12888680 at *18. "An accommodation is not reasonable if it either imposes undue financial and administrative burdens . . . or requires a fundamental alteration in the nature of the program." *Datto v. Univ. of Central Fla. Bd. of Tr.,* 2021 WL 2792135, at *6. An educational institution is not required to "lower or effect substantial modifications of standards to accommodate a student's disability. *Id.* at *5. "Where the purpose of an educational program is to train persons to serve their profession in customary ways, an institution's refusal to make major adjustments to its program does not amount to disability-based discrimination." *Datto v. Fla. Int'l Univ. Bd. of Tr.,* 2020 WL 3963713, at *9.

### 3. USA is entitled to deference regarding its academic decisions

Universities are entitled to deference in their academic decision-making in both the discrimination and reasonable accommodation context. *See Ellis v. Morehouse Sch. of Med.,* 925 F. Supp. 1529, 1541-43 (N.D. Ga. 1996). "The Supreme Court has determined that university faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Meisenhelder,* 2010 WL 2028089, at *5. Indeed, "judges should show great respect for faculty's professional judgment when reviewing a

genuinely academic decision and may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2016). "University faculties are to be given the widest range of discretion in making judgment as to the academic performance of students." *Wilf*, 2012 WL 12888680, at *19.

### 4. Plaintiff was not a qualified individual under the ADA or Rehab Act

Whether Plaintiff is a "qualified individual" is a threshold inquiry as to both his disparate treatment and failure to accommodate claims. *See Redding*, 165 F. Supp. 3d 1274 at 1289. "An 'otherwise qualified' individual is one who is able to meet all of the program's requirements in spite of [his] disability." *Zainulabeddin v. Univ. of S. Fla. Bd. Tr*, No. 8:16-cv-637-T-30TGW, 2017 WL 5202998, at *5 (M.D. Fla. April 19, 2017). "In the context of postsecondary education, the individual must be able to meet the academic and technical standards required by the program." *Id.* "There is no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person. *Goldberg v. Fla. Int'l Univ. Bd. of Tr.*, No. 18-20813-CIV-MARTINEZ/OTAZO-REYES, 2020 WL 1815360, at *5 (S.D. Fla. April 9, 2020). Thus, Nguyen must show that he was "able to meet all of a program's requirements in spite of [his] handicap." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979). *Davis* specifically rejected the idea that an individual is "otherwise qualified" if he would have been qualified but-for his disability. *See id.*

Nguyen cannot "bootstrap [his] disease into the line of causation" by relying on his health conditions to excuse his failure to meet the University's academic requirements. *Seiefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995).

Here, Plaintiff was dismissed because his "academic performance [did] not [meet] the requirements for continued progression in the degree program."[78] USA's policies were clear that, "[a] student will be dismissed from the program if an F is received in any course."[79] Nguyen's dismissal was upheld because the AAC had legitimate concerns regarding Nguyen's academic performance, professional behaviors, and academic integrity.[80] The AAC, a committee of six USA faculty members, reviewed Plaintiff's academic progress and unanimously determined he was not performing up to USA's standards.[81] The decision was made after discussion and careful consideration, and was based on a number of academic and professional concerns.[82] "[D]eference should be given to an education institution's judgment regarding the qualifications necessary for participation in its program." *Redding,* 165 F. Supp. 3d 1274 at 1290. Accordingly, Plaintiff is not "otherwise qualified" within the meaning of the Rehab Act or the ADA. *See Zainulabeddin*, 2017 WL 52029987 at *6; *Goldberg,* 2020 WL 1815360, at *6-7 (S.D. Fla. April 9, 2020).

   **5. Plaintiff's claim for disparate treatment also fails because he cannot establish that his dismissal was "because of" his disability and cannot establish pretext**

---

[78] Nguyen Depo. Exh. 27.
[79] Nguyen Depo. Exh. 36 at KAL000200.
[80] Nguyen Depo. Exh. 33.
[81] Perry Decl. Exh. A.
[82] Perry Decl. Exh. A; Exh. B.

If Nguyen can show that he was "qualified," he must next show that USA's legitimate non-discriminatory reason for dismissal was pretextual.[83]   *Iaciofano,* 2017 WL 564368, at *4. To succeed, Nguyen must establish that USA dismissed him "solely by reason of his disability." *J.A.M. v. Nova Southeastern Univ.*, 646 Fed. Appx. 921, 927 (11th Cir. 2016).  The record is devoid of such evidence. Based on Nguyen's admitted violation of USA's Academic Integrity Policy, the "downward trend in academic performance" observed by the AAC, and the AAC's other identified concerns, no reasonable jury could conclude that USA was motivated by discriminatory animus in its decision. *See Zainulabeddin*, 749 Fed. Appx. 776 at 783-85.

### 6. USA is not obligated to provide accommodations to Nguyen when he did not request them

Plaintiff takes the position that, because he generally mentioned his ADHD and GAD diagnoses to his professors, USA had an affirmative duty to provide him with a reasonable accommodation.[84]   However, "the duty to provide a reasonable accommodation under the Rehabilitation Act and ADA is not triggered unless a specific demand for an accommodation has been made." *Goldberg*, 838 Fed. Appx. 487 at 492; *Wilson v. Sec'y of Veterans Affairs Dep't of Veterans Affairs*, No. 20-10799, 2022 WL 1907863, at *4 (11th Cir. June 3, 2022). "Where the disability, resulting limitations, and necessary reasonable accommodations [ ] are not open, obvious, and apparent, the initial burden rests primarily on the [individual] to specifically identify the

---

[83] Nguyen Depo. Exh. 33.
[84] Nguyen Depo. at 39-41, 49-50, 168; (Doc. 1) Complaint.

disability ... and to suggest the reasonable accommodations." *Meisenhelder*, 2010 WL 2028089, at *4. "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [defendant] to make appropriate inquiries about the possible need for an accommodation." *Milligan v. Rambosk*, No. 220CV403FTM29MRM, 2022 WL 562342, at *10 (M.D. Fla. Feb. 24, 2022).

Accordingly, to the extent Nguyen's claims are based solely on Nguyen's assertions that USA should have provided him with accommodations because it was aware of his diagnoses, Nguyen's claims fail. Nguyen's discussions with professors in which his disabilities were referenced were informal, peripheral, and generally in the context of Nguyen discussing issues with his time management.[85]   Indeed, Nguyen admits that he did not actually make any requests for accommodations, but only informed professors of his diagnoses.[86] Accordingly, nothing in those conversations triggered USA's duty to provide Nguyen with reasonable accommodation. *Doe v. Univ. of Miami*, 446 F. Supp. 3d 1000, 1010 (S.D. Fla. 2020). Furthermore, any arguable request for accommodation did not occur until after Nguyen failed the Mock Clinic final exam. Because Plaintiff failed to request any reasonable accommodations, summary judgment should be granted for USA. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (a plaintiff cannot establish a claim

---

[85] Nguyen Depo. at 39-41; 49-50.
[86] Nguyen Depo. at 33, 36, 39-41; 49-50, 63-64.

under the Rehab Act and the ADA for failure to provide a reasonable accommodation unless he demanded an accommodation); *see also Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 488 (N.D. Ohio 2007).

### 7. Completing the unfinished Mock Clinic final is not a reasonable accommodation

Nguyen admits that he never requested to *retake* his Mock Clinic final exam but instead only requested to complete the final exam that he took but did not finish weeks earlier.[87] It is undisputed that Nguyen failed to provide any documentation from his physician to support an accommodation request, which was required under USA's policy.[88] *Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 135 (D. Mass. 1997) ("The ADA permits a university to require a student requesting a reasonable accommodation to provide current documentation . . . concerning his disability"). Moreover, an educational institution is not required to "lower or effect substantial modifications of standards to accommodate a student's disability." *Datto v. Fla. Int'l Univ. Bd. of Tr.*, 2020 WL 3963713, at *9. "Where the purpose of an educational program is to train persons to serve their profession . . ., an institution's refusal to make major adjustments to its program does not amount to disability-based discrimination." *Id.* Also, a plaintiff is not entitled to the accommodation of his choice. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).

Plaintiff admits that the only request for accommodation he made was to

---

[87] Nguyen Depo. at 108; 151.
[88] Nguyen Depo. at 108-109; Exh. 36 at KAL000120.

complete the Plan of Care part of his December 2018 exam.[89]  It is undisputed that Plaintiff first made this request 10 days after the exam and his requests continued for weeks after.[90]  Plaintiff failed to request a reasonable accommodation.  First, the Mock Clinic final is a timed exam in which students are permitted a maximum of 45 minutes to complete the practical portion and a maximum of 80 minutes to complete the Plan of Care.[91]  Students lose credit for not completing the section within the allotted time.[92]  The exam requires students to move directly from the practical to writing the Plan of Care to mimic real life clinical experiences.[93]  It also requires students to obtain objective data from patients and synthesize the data to develop a clinical diagnosis.[94]  Indeed, the ability to perform in stressful environments or during impending deadlines and timely completing tasks, including completing timed written, oral, and laboratory practical examinations is considered an essential function of USA's Physical Therapy Program.[95] Allowing Nguyen to write the Plan of Care weeks after the exam was given is not a reasonable accommodation, as it would require USA to make substantial modification to the program and lower its standards.  *See Datto v. Fla. Int'l Univ. Bd. of Tr.*, 2020 WL 3963713, at *9; *see also Carlson v. Carroll Univ.*, No. 09-C-551, 2011 WL 5921445, at *13 (E.D. Wis. Nov. 28, 2011); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F. 3d 432, 437 (6th Cir. 1998).

---

[89] Nguyen Depo. at 104-106, 108, 111, 151.
[90] Nguyen Depo. at 104-106.
[91] Nguyen Depo. Exh. 14 at USA/Nguyen 000975.
[92] Nguyen Depo. Exh. 14 at USA/Nguyen 000975.
[93] Wicinski Decl. at 4.
[94] Wicinski Decl. at 4.
[95] Nguyen Depo. Exh. 1 at USA/Nguyen 000013-000015.

**8. The undisputed evidence shows that USA had a designated disability office and disability officer who provided assistance to Plaintiff**

Plaintiff alleges that USA somehow discriminated against him by "[f]ailing to provide a disability accommodation coordinator for the St. Augustine campus of USA."[96] Not only is this not a cognizable claim under the ADA or the Rehab Act, as nothing in the statutes requires a university to employ a disability coordinator, but this allegation is demonstrably false. During the 2018/2019 Academic Year, Ryan Davis was USA's Disability Services Coordinator for all of USA's campuses, including its St. Augustine location.[97] In his role, Davis was specifically responsible for providing general support and assistance to students with disabilities, which included assisting students in navigating USA's disability accommodation process.[98] It is undisputed that Nguyen was aware of Davis and Nguyen's claim lacks merit.[99]

**B. Plaintiff cannot establish a breach of contract (Count III)**

It is well settled in Florida that the relationship between a student and a private educational institution is solely contractual in nature. *Stetson Univ. v. Hunt*, 102 So. 637 (Fla. 1925); *Sharick v. Se. Univ. of Health Scis., Inc.*, 780 So. 2d 136 (Fla. 3d DCA 2000). These terms are generally derived from the school's publications at the time of enrollment, such as the student handbook. *See Sirpal v. Univ. of Miami*, 509 Fed. App'x

---

[96] (Doc. 1)Complaint at 9, 11.
[97] August 9, 2022 Declaration of Laura Kauffman ("Kauffman Decl.") at 1-2, Exh. A, Exh. B. From May 16, 2018 until August 2020, Ryan Davis's title was Manager, Student Affairs and Disability Services for the University of St. Augustine for Health Sciences. Kauffman Decl. at 1.
[98] Kauffman Decl. Exh. B.
[99] Nguyen Depo. at 93-102, Exh. 22-23

924, 929 (11th Cir. 2013); *see also Sharick*, 780 So. 2d at 138. However, the "university's publications are terms of an implied-in-fact contract rather than an express contract." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268-69 (S.D. Fla. 2004).

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Smith v. Casey*, 1:12-CV-23795-UU, 2014 WL 11878422, at *4 (S.D. Fla. Oct. 29, 2014). "Florida law requires the plaintiff to plead and establish . . . a material breach of that contract . . . and damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (internal citations omitted). "To establish a material breach, the party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract . . . ." *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015). A material breach occurs only when an injured party has sustained a substantial injury due to the breach. *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1342–43 (M.D. Fla. 2006). Due to the unique nature of the private institution-student implied-in-fact contract, courts adhere to a "deferential standard" and will not "interfere with a private university's enforcement of its regulations" in material breach of its implied-in-fact contract unless "the university has acted [1] arbitrarily and capriciously, [2] in violation of a constitution or statute, or [3] for fraudulent purposes." *Sirpal*, 509 F. App'x at 929.

Plaintiff alleges that USA breached its contract with Plaintiff by (1) failing to provide Plaintiff with services related to his disability and (2) failing to allow Plaintiff

to retake his final exam.[100]   First, Nguyen was not provided with accommodations because he failed to request them.[101]   USA's policy states that "[t]o request reasonable accommodations, a student must complete the Reasonable Accommodation Request Form."[102]   Nguyen admits that he never submitted the required forms or documentation.[103]   Moreover, as outlined in detail above, USA did not breach any obligations it had to provide Nguyen with any services related to his alleged disability.

Second, USA's policy regarding retaking practical exams states, that "it is the student's responsibility to contact the faculty instructor . . . to receive instructions regarding how to write a plan of remediation."   It is undisputed that Nguyen failed to request to retake the exam, submit a remediation plan, or otherwise contact Dr. Wicinski regarding the Mock Clinic final.[104]   Because Nguyen failed to follow USA's published procedure, USA did not breach any obligation owed to him. Moreover, any alleged breach based on the failure to permit Nguyen to retake the exam was not material. USA's policy states that the highest grade a student can receive for passing the first retake of a practical exam is 75%.[105]   It is undisputed that Nguyen needed a grade of 87.4% on the final exam to pass the Mock Clinic course.[106]   Because Nguyen could not have achieved a passing grade even if he earned a perfect score on his retake,

---

[100] (Doc. 1) Complaint at 12-13.
[101] *See* Nguyen Depo. Exh. 36 at KAL000120 (stating, "Students with a disability should expect to maintain the standards that apply to all University students and request only the accommodations approved by this process.")
[102] Nguyen Depo. Exh. 36 at KAL000120.
[103] Nguyen Depo. at 109.
[104] Nguyen Depo. at 108, 148.
[105] Nguyen Depo. Exh. 36 at KAL000197.
[106] Wicinski Decl. at 5.

any alleged breach by USA is not material.

## C. Plaintiff cannot establish a claim for negligence (Count IV)

As explained herein, USA had established policies under which a student needing reasonable accommodations could make such a request. The law is clear that USA has no duty to provide reasonable accommodations unless and until a student makes such a request. *See Goldberg v. Florida Int'l Univ.*, 838 Fed. Appx. at 492. In this case, Nguyen did not request any reasonable accommodations from USA's disability office or otherwise and, further, failed to make any request for accommodation until after he failed the Mock Clinic final exam.[107]  Moreover, there is no record evidence that Nguyen suffered any bodily injury or property damages, which is "an essential element of a cause of action in negligence," or that a "special relationship" exists between Nguyen and USA that would support a finding of negligence in the absence of such damage. *See Segev v. Lynn Univ., Inc.*, No. 19-CV-81252, 2021 WL 2269838, at *17-18 (S.D. Fla. Feb. 26, 2021) (granting summary judgment on student negligence claims where there was no evidence of property damages or bodily injury and no allegations of a special relationship between the plaintiff and university); *Virgilio v. Ryland Group, Inc.*, 695 F. Supp. 2d 1276, 1281 (M.D. Fla. 2010) ("Florida's negligence law, in general, has traditionally been limited to those endeavors that create foreseeable risks of bodily injury or property damage.")  Nguyen claims only emotional distress due to the alleged negligence and does not allege bodily injury.[108]

---

[107] Nguyen Depo. at 104-106, 108-109, 111, 151.
[108] (Doc. 1) Complaint at 15.

To the extent that Nguyen's claim is based on facts identical to those alleged in support of his breach of contract claim, he cannot sustain a negligence claim. *Id.* at 18. Finally, if Nguyen is attempting a claim for negligent training and/or supervision, it is well settled that "a violation of the ADA is not a recognized common law tort and will not sustain a claim for negligent training."[109] *Id.* at 20; *Gutman v. Quest Diagnostics Clinical Lab., Inc.*, 707 F. Supp. 2d 1327, 1331 (S.D. Fla. 2010).

## D. There is no record evidence of defamation and USA is entitled to a qualified privilege (Count V)

"The elements of defamation are (1) publication; (2) falsity; (3) the actor must act at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Charter Schs. USA, Inc.*, No 18-24005-CIV-GAYLES/MCALILEY, 2020 WL 620392, at *14 (S.D. Fla. Jan. 14, 2020). Plaintiff testified that the alleged defamatory statement is contained in the January 14, 2019 AAC decision letter.[110] As an initial matter, there is no evidence that USA published the alleged defamatory statement. Nguyen testified that *he* was the one who informed Harvard about "the letter in [his] record for physical therapy that pertains to questionable academic performance, professional behaviors and academic integrity."[111] Further, USA has no record of transcripts being requested or released to Harvard or any other educational institution.[112] Moreover, Nguyen suffered no

---

[109] *See* (Doc. 1) Complaint at 14.
[110] Nguyen Depo. at 179-181; Exh. 33.
[111] Nguyen Depo. at 154.
[112] August 8, 2022 Declaration of Diane Rondinelli at 1-2.

damages as a result of the alleged statement because Harvard never rejected him, instead, Nguyen chose not to complete the provisional program.[113]

In addition, USA is entitled to a qualified privilege in this case.[114] "If a speaker makes a statement to another and the two share a legal interest in the subject matter of the statement, the statement is protected by a qualified privilege and is not actionable unless made with express malice." *Cape Publ'n, Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. 5th DCA 2003). "The issue of whether this qualified privilege exists is not a jury question when the circumstances surrounding the communication are undisputed; the question should be decided by the court." *Id.* If USA had provided the January 14th letter to other educational institutions as part of Nguyen's student record, those institutions would have an interest in the subject matter of the statement. There is no evidence of express malice by USA. Indeed, assuming the facts as Nguyen claims, USA simply provided Harvard with a copy of Nguyen's USA student file, which included the AAC letter denying Nguyen's appeal of his dismissal.[115]

## III.   CONCLUSION

Defendant, University of St. Augustine for Health Sciences, LLC, requests this Court enter summary judgment in its favor and against Plaintiff on all claims in the Complaint.

---

[113] Nguyen Depo. at 156-158.
[114] USA pled qualified privilege as an affirmative defense to Plaintiff's defamation claim. *See* (Doc. 14) Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint at 10.
[115] *See* Nguyen Depo. Exh. 36 at KAL000175. "Records of sanctions of the Academic Appeals Committee . . . [are] permanently maintained" as part of a student's permanent record at USA.

Dated this _10th_ day of August 2022.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT P.A.

By:_____
Kelly DeGance
Florida Bar No. 0606022
E-mail: kelly.degance@adblegal.com
Mark Alexander
Florida Bar No. 434078
E-mail: mark.alexander@adblegal.com
Samantha Giudici Berdecia
Florida Bar No. 0058667
E-mail: samantha.giudici@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August _10_, 2022, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system, which will serve the

document electronically by email to the following: Keith Altman and Kimberly

Dodson, The Law Office of Keith Altman, 33228 West 12 Mile Road,

Suite 375, Farmington Hills, MI 48331 (keithaltman@kaltmanlaw.com)

(KimberlyDodson@kaltmanlaw.com).

_____
ATTORNEY