## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**LUKE NGUYEN,**                                                   **Case: 3:21-cv-00173**

           **Plaintiff,**

**v.**

**UNIVERSITY OF ST. AUGUSTINE**
**FOR HEALTH SCIENCES,**

           **Defendant.**

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (52)

Comes now Plaintiff Luke Nguyen ("Plaintiff"), by and through the undersigned counsel, and hereby files this Response to Defendant's Motion for Summary Judgment (Doc. 52).  In support thereof, Plaintiff states as follows:

### I.     UNDISPUTED FACTS

1.     In December 2005, Plaintiff graduated from University of West Florida. (Plf. Depo. 13).

2.     Plaintiff takes medication for ADHD and generalized anxiety disorder. (Plf. Depo. 12).

3.     In Summer 2016, Plaintiff was enrolled in the accelerated Doctor of Physical Therapy Program. (Plf. Depo. 16).

4.     Defendant's policies and procedures require students to seek out and request from the administration *to be counseled regarding the process* for requesting an accommodation before a student will receive assistance regarding their disabilities. (Plf. Depo. 19).

5.     Plaintiff passed all seven courses enrolled in first semester in 2016. (Plf. Depo. 21).

6.     On September 11, 2016, at the beginning of the term, Plaintiff had a panic attack. (Plf. Depo. 23).

7.     Immediately upon Plaintiff experiencing a panic attack, Plaintiff reviewed Defendant's handbook and followed the procedures to the best of ability. (Plf. Depo. 23).

8.     Plaintiff per Defendant's policies asked for a leave of absence.  (Plf. Depo. 23).

9.     On September 19, 2016, Plaintiff was diagnosed with general anxiety disorder (GAD) and attention deficit hyperactivity (ADHD). (Plf. Depo. 12, 25). Prior to the September 19, 2016, diagnoses, Plaintiff had never been diagnosed with a medical disability. (Plf. Depo. 27, 28).

10.     From the time of the panic attack up until his appointment on September 19, 2016, Plaintiff stayed in contact with his Advisor, Lisa Chase and Program Director, Jeff Rot. (Plf. Depo. 25).

11.     Plaintiff followed all of Defendant's policies and procedures to be granted a leave of absence for his anxiety and scheduling issues. (Plf. Depo. 28, 29).

12.     Plaintiff immediately informed Chase, Rot and Dr. Debra Gray, Director of Flex DPT Program and new Advisor, of his diagnoses. (Plf. Depo. 26).

13.     Plaintiff relied on the Defendant to advise him of what course of action to take based on his medical disability diagnoses and continuing with his education with the Defendant. (Plf. Depo. 26).

14.     Plaintiff made his medical conditions clear to the Defendant and deferred to the Program Director, i.e., the Defendant to accommodate his newly discovered disabilities. (Plf. Depo. 30).

15.     Chase and Rot recommended that Plaintiff transfer out of the "aggressive" DPT program into the Flex DPT Program due to his diagnoses to reduce case load. (Plf. Depo. 26, 27).

16.     In January 2017, Plaintiff was transferred to the Flex DPT Program because of his disabilities. (Plf. Depo. 33). The Flex DPT Program achieved the same degrees as the DPT Program, but the time of degree completion is a longer time incorporating a hybrid program which required online courses and in-person courses for practical skills and examinations. (Plf. Depo. 34-35).

17.     Summer semester of 2017, Plaintiff received an A in general pathology and psychosocial/ethical and a B in biomechanics. However, Plaintiff expressed concerns with his professors in biomechanics that due to his medical diagnoses that he needed additional time for examinations since course had a laboratory component. (Plf. Depo. 37-38). Plaintiff needed the additional time because his GAD caused Plaintiff to think of everything multiple times before answering, and the exam requires responses in thirty seconds.  (Plf. Depo. 38).

18.     Plaintiff's biomechanics instructor dismissed his requests for additional time for laboratory examinations. (Plf. Depo. 38).

19.     Whenever Plaintiff requested additional time, his professors dismissed him and merely recommended that he "practice". (Plf. Depo. 38).

20.     In fall of 2017, Plaintiff made his neurosciences and physical modalities professors aware of his concerns of the practical examinations and he was advised by his professor that he needed to be more confident in his knowledge. (Plf. Depo. 39-40).  Plaintiff's scores in physical modalities were lower because due to Plaintiff's disabilities it took him longer to complete the exams.  (Plf. Depo. 40).

21.     Plaintiff personally talked to all his professors making them aware of his condition, but none of the professors ever advised him that he was required to go to the USA's disability services in order for him to receive an accommodation for his disabilities even though they were

Plaintiff's Response to Defendants' Motion for Summary Judgment

all clearly aware of his disabilities.  (Plf. Depo. 41).  Plaintiff did not know that he was required to go to USA's disability services to get assistance (additional time for examinations) for his disabilities. (Plf. Depo. 41).

22.     Plaintiff repeatedly asked the Kempfert, Wicinski and Gray, Defendant, to be given additional time to take exams due to his disabilities but was denied even though the Defendant was aware of his disabilities. (Plf. Depo. 57-60).

23.     Plaintiff repeatedly expressed to Defendant his apprehension of not being able to complete exams within the time restraints. (Plf. Depo. 61; Ex. A and B). Plaintiff asked for an accommodation that his most time-consuming exam be saved until the last of the exam. (Plf. Depo. 57-60).

24.      In Spring, 2018, Dr. Kempfert, professor of musculoskeletal I, although he was aware of Plaintiff's disabilities did not give the Plaintiff the opportunity for additional time to take exams causing Plaintiff to fail exams and repeatedly have to retake exams. (Plf. Depo. 43-44, 59-60).

25.     Plaintiff asked Dr. Kempfert if he could retake the exam and he was provided a form which he filled out the specifics of why he needed additional time (total of five pages) and expressed that he felt that the university knew of his conditions and the testing were not fair because the testing conditions were inconsistent with co-students and the professor was intentionally leading answers to other students. (Plf. Depo. 44, 47, 48, 56-57; Ex. B). (*See* Retake Form **Exhibit A** attached hereto and incorporated herein.)

26.     The exam consisted of first, assessing musculoskeletal deficiencies, second, Kempfert randomly asking students to identify a random condition and necessary treatment, and

Plaintiff's Response to Defendants' Motion for Summary Judgment

third, labeling component of anatomical structure randomly chosen for each student by the professor. (Plf. Depo. 49).

27.     Upon receipt of the intake form, Professor Kempfert refused Plaintiff a retake of the exam and told Plaintiff that his requests were unprofessional and a personal attack on him. (Plf. Depo. 45, 47-48).

28.     After Kempfert refused Plaintiff's retake, Plaintiff scheduled a meeting with Kempfert, upon arriving at the meeting on April 11, 2018, Plaintiff was shocked that Dr. Wicinski was present. (Plf. Depo. 47-48).

29.     Instead of Kempfert aiding Plaintiff in his request for retake the exam, he told Wicinki that Plaintiff made a personal attack on him in submitting the retake form. (Plf. Depo. 48).

30.     After the April 11, 2018, meeting, Plaintiff discussed with Wicinski his GAD and ADHD and asked for advice only to be told to practice more. (Plf. Depo. 49). Plaintiff explained to Wicinski that he had practiced and even stated that he would provide proof. (Plf. Depo. 50).

31.     On April 14, 2018, in an email, Plaintiff submitted a remediation plan to Wicinski and Kempfert. On April 16, 2018, via email Plaintiff was denied the request to have a sheet of paper and a pencil during exams. (Plf. Depo. 54-55) (*See* **Exhibit B** attached hereto and incorporated herein). Plaintiff discussed the need for sheet of paper and pencil in meeting with Dr. Debra Gray and Dr. Kempfert held on April 17, 2018. (Plf. Depo. 55-56).

32.     Instead of providing Plaintiff with accommodations, Defendant expressed in an email their concerns that he lacked foundational knowledge.  (Plf. Depo. 62).

33.     In summer of 2018, Plaintiff received an A, B, B+ and C and did not have to retake any exams because none of the exams were practical examinations. (Plf. Depo. 63-64).

Plaintiff's Response to Defendants' Motion for Summary Judgment

34.     In the Fall of 2018, Plaintiff received an A, A, B and F in mock clinic II.   (Plf. Depo. 65). On the mock clinic II midterm, Plaintiff was the only student that was told that he was not allowed to receive additional help from anyone, causing him to not get information from his partner which resulted in an F grade.  (Plf. Depo. 69-71).

35.     After failing the midterm which was 75% of his grade, Plaintiff had a panic attack in December 2018. (Plf. Depo. 74-75).

36.     Plaintiff continues to receive continuous medical treatment and medication for his GAD and ADHD, Prozac and Adderall. (Plf. Depo. 75).

37.     On November 30, 2018, Plaintiff telephoned and sent an email to Wicinski advising that he had suffered another panic attack and asked that his December 6, 2018 examination be rescheduled. (Plf. Depo. 76-77).

38.     On December 3, 2018, Plaintiff had a meeting with Wicinski asking for ADA advice. (Plf. Depo. 77).

39.     On December 6, 2018, Plaintiff sent an email to Wicinski wherein he advised that his primary care physician and psychiatrist believed it was ok for him to continue with school with a time and half option for examinations in the future. (Plf. Depo. 82-83) (*See* December 6, 2018, email attached hereto and incorporated herein as **Exhibit C**).

40.     On December 8, 2018, Plaintiff took his mock clinical final with Wicinski which consisted of two parts tested back-to-back.  Immediately upon learning that if he had fallen a few points short of passing, he had an anxiety attack and told Gray, his advisor and Wicinski, his instructor, that he was having a panic attack. (Plf. Depo. 86-87).

41.     USA's student disability office is not located on campus.  (Plf. Depo. 92).

Plaintiff's Response to Defendants' Motion for Summary Judgment

42.     On December 9, 2018, when Plaintiff tried to locate the disability office on the main campus, he was told three different places to go and ultimately was told that the Defendant did not have a disability office and he had to contact Ryan Davis, disability officer for all three campuses, and was given a card where he could reach him. (Plf. Depo. 92).

43.     The employees in the administration building did not even know where the disability office was to instruct Plaintiff where to go. (Plf. Depo. 92). Finally, Plaintiff was given a card with Ryan Davis, disability officer's name on it and told to call him. (Plf. Depo. 92).

44.     On December 10, 2018, Plaintiff called Ryan Davis and left him a voicemail requesting to talk to him about recent events and student disability and specifically asked that him to point him in the right direction.  (Plf. Depo. 94). (Whole audio played on deposition transcript.) (Plf. Depo. 94).

45.     When Plaintiff talked to Ryan Davis, he was unaware of who Plaintiff was or his diagnoses even though Plaintiff had made clear his medical condition to his professors and advisors during his tenure at USA.  (Plf. Depo. 92-93).

46.     Plaintiff told Ryan Davis, disability officer, that he was reaching out for accommodations for student disability and explained that he had told his professors, advisor and the program director throughout his tenure of his learning disabilities and had repeatedly asked for help only to be told that he was unprepared. (Plf. Depo. 94-95).

47.     On December 10, 2018, Plaintiff left a second voicemail with Davis advising that he had a letter from his psychiatrist and wanted guidance of whether the letter which provided his medical diagnoses was enough or if he needed additional documentation to get assistance from the disability office.  Plaintiff followed up the voicemail with an email requesting assistance from

Plaintiff's Response to Defendants' Motion for Summary Judgment

Davis. (Plf. Depo. 98-99, 101-102) (*See* **Exhibit D** attached hereto and incorporated herein).  Davis never returned Plaintiff's calls until after he was dismissed from the program. (Plf. Depo. 99).

48.     The week of December 9ᵗʰ 2018, Plaintiff in a meeting with Gray requested to appeal his midterm grade because he did not have the tools afforded to the other students and his requested accommodations being denied. (Plf. Depo. 103, 110-111).

49.     Plaintiff requested from Wicinski and Gray to retake the first portion of the mock clinic examination as the Defendant afforded other students to retake both portions of the exam the week of Christmas, 2018 and to write his plan of care after the retake exams. (Plf. Depo. 103-106, 110-111, 122).

50.     Gray told Plaintiff that USA does not allow additional time on practical exams. (Plf. Depo. 112).

51.     Wicinski denied Plaintiff's right to retake the mock clinic examination stating that even if he got accommodations with Ryan Davis that no accommodations would be made for mock clinic because it was inconducive to physical therapy practice and that the licensing boards would not allow accommodations. (Plf. Depo. 106-107, 110).

52.     Plaintiff filed a formal appeal of his midterm mock clinical exam with Wicinski and Dr. Schreiner. (Plf. Depo. 114, 117). Defendant denied Plaintiff's appeal of his midterm mock clinical exam. (Plf. Depo. 117, 123).

53.     Although Plaintiff had made his disabilities known to the Defendant, Plaintiff was denied a retake of the midterm, additional time to take examinations, use of pencil and paper, use of materials that other students used resulting in Plaintiff receiving a grade of F for mock clinical II. (Plf. Depo. 123-124).

Plaintiff's Response to Defendants' Motion for Summary Judgment

54.     On December 21, 2018, via a letter Plaintiff was informed that he was dismissed from the Flex DPT Program. (Plf. Depo. 125).  Plaintiff appealed the dismissal. (Plf. Depo. 126-127).

55.     Plaintiff stated in his appeal that he "had been communicating with disability services to coordinate with his psychiatrist for appropriate testing accommodations".  (Plf. Depo. 128). Plaintiff continued to communicate with disability services throughout the appeal process attempting to get accommodations and his appeal reversed. (Plf. Depo. 128-129, 136).

56.     On January 23, 2019, Plaintiff received an email instructing him to submit his appeal to the President of USA "as soon as possible".  (Plf. Depo. 139).  Additional time was given for Plaintiff to submit the appeal to the President with no specific hard deadline set. (Plf. Depo. 142).

57.     On May 19, 2022, Plaintiff was deposed.

## II.     SUMMARY JUDGMENT STANDARD

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). *J.S.R v. Dale Cty. Bd. of Educ.*, No. 1:13-CV-582-WKW, 2015 U.S. Dist. LEXIS 129741, at *3 (M.D. Ala. Sep. 28, 2015).

Section 309 of the Americans with Disabilities Act fills the gap regarding testing and examination not defined by Section 504 of the Rehabilitation Act of 1973 or Title II of the ADA. Any educational facility that receives federal money or is a public facility because it is a function of the state or local government as defined under Title II of the ADA is required to make any

Plaintiff's Response to Defendants' Motion for Summary Judgment

examination accessible to persons with disabilities. This requirement includes physical access to the testing facility, *as well as any modification of the way the test is administered to assist the disabled.* Modifications may include offering *extended time,* written instructions, or the assistance of a reader.

### III.   ARGUMENT

A.   PLAINTIFF'S GAD AND ADHD ARE DISABILITIES PROTECTED BY THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973

In the Summer of 2016, Plaintiff had a panic attack and subsequently diagnosed with general anxiety disorder (GAD) and attention deficit hyperactivity disorder (ADHD). (Plf. Depo. 12, 16). Since that time, Plaintiff has continuously received treatment and medication for his disabilities. (Plf. Depo. 12, 75). GAD and ADHD are recognized disabilities under the ADA and Rehab Act. The ADA prevents individuals who have a qualified disability from being discriminated against because of their disabilities. Title II of the ADA applies specifically to educational institutions, requiring them to make educational opportunities, extracurricular activities, and facilities open and accessible to all students.

Rehab Act defines individuals with disabilities as those who have a physical or mental impairment which substantially limits one or more major life activities; has a record of such impairment; or is regarded as having such an impairment, including physiological disorders … psychological disorders such as mental retardation, mental illness, or learning disabilities. The deciding factor in determining whether or not a person suffers from a disability under Section 504 is whether the impairment limits one or more major life activities, such as walking, performing manual tasks, seeing, hearing, speaking, breathing, learning and/or working. The ADA defines a disability as a "physical or mental impairment that substantially limits one or more major life

Plaintiff's Response to Defendants' Motion for Summary Judgment

activity; a record of such impairment; or being regarded as having such impairment." Section 504 applies to educational institutions who receive grant monies from the federal government, while Title II of the ADA applies only to public entities. Mental disabilities are sometimes hidden disabilities and considered to be any physical or mental impairments that are not readily apparent to others, including such as in Plaintiff's situation, learning disabilities. The goal and purpose of the two acts is to ensure that those who suffer various specified disabilities are allowed equal accommodated access to education.

1.      PLAINTIFF IS ENTITLED TO RELIEF UNDER ADA AND REHAB ACT

Proving a school district's deliberate indifference, bad faith, or gross misjudgment is a high standard that can be difficult for a plaintiff to meet, but the court may not weigh the evidence at summary judgment. Consequently, district courts have allowed special education cases arising under § 504 and/or the ADA to proceed to trial where the court could not decide the question of intentional discrimination as a matter of law. *J.S.R v. Dale Cty. Bd. of Educ.*, No. 1:13-CV-582-WKW, 2015 U.S. Dist. LEXIS 129741, at *40 (M.D. Ala. Sep. 28, 2015). For example, in *D.A.*, the court found the plaintiff's evidence that the defendant provided inadequate testing to a student was sufficient reason to deny the defendant's motion for summary judgment, notwithstanding the defendant's evidence of its efforts to provide accommodations to the plaintiff. D.*A. v. Meridian Joint Sch. Dist. No. 2*, 289 F.R.D. 614, 623 (D. Idaho 2013). Similarly, in *Ms. H.*, the plaintiff presented probative evidence that the defendant "simply ignored [the student] by failing to conduct tests or assessments, and by failing to significantly update [the student's] § 504 plans despite [the student's] poor grades." *Ms. H. v. Montgomery Cnty. Bd. of Educ.*, 784 F. Supp. 2d 1268 (M.D. Ala. 2011).

Plaintiff's Response to Defendants' Motion for Summary Judgment

Section 309 of the ADA fills the gap regarding testing and examination not defined by Section 504 of the Rehabilitation Act of 1973 or Title II of the ADA.  Any educational facility that receives federal money or is a public facility because it is a function of the state or local government as defined under Title II of the ADA is required to make any examination accessible to persons with disabilities. This requirement includes physical access to the testing facility, as well as any modification of the way the test is administered to assist the disabled. Modifications may *include offering extended time,* written instructions, or the assistance of a reader.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). *J.S.R v. Dale Cty. Bd. of Educ.*, No. 1:13-CV-582-WKW, 2015 U.S. Dist. LEXIS 129741, at *30 (M.D. Ala. Sep. 28, 2015). Additionally, under 504, Plaintiff was required to make his condition known to the Plaintiff which he repeatedly did, and it is undisputed that Defendant was aware of his disabilities. (Plf. Depo. 26). Plaintiff talked to his professors and made them aware of his condition, but none of the professors ever advised him that he was required to go to the USA's disability services in order for him to receive an accommodation for his disabilities even though they were all clearly aware of his disabilities.  (Plf. Depo. 41).  Plaintiff did not know that he was required to go to USA's disability services to get assistance (additional time for examinations) for his disabilities. (Plf. Depo. 41). Plaintiff relied on the Defendant to advise him of what course of action to take with his medical disability diagnoses in continuing with his education with the Defendant. (Plf. Depo. 26). Plaintiff made his medical conditions clear to the Defendant and deferred to the Program Director, i.e., the Defendant to accommodate his newly discovered disabilities. (Plf. Depo. 30). Plaintiff expressed

Plaintiff's Response to Defendants' Motion for Summary Judgment

concerns with his professors in biomechanics that due to his medical diagnoses that he needed additional time for examinations since course had a laboratory component. (Plf. Depo. 37-38). Plaintiff's biomechanics instructor dismissed his requests for additional time for laboratory examinations. (Plf. Depo. 38). Plaintiff needed the additional time because his GAD caused Plaintiff to think of everything multiple times before answering, and the exam requires responses in thirty seconds.  (Plf. Depo. 38).  When Plaintiff requested additional time, his professors dismissed him and merely recommended that he "practice". (Plf. Depo. 38,48,49). Plaintiff expressed the need to Gray and Kempfert for an accommodation of a sheet of paper and pencil during exams. (Plf. Depo. 55-56).

Although Defendant continued to deny Plaintiff an accommodation for time and a plan for implementing learning and passing based on Plaintiff's disabilities, Plaintiff continued, repeatedly asking Kempfert, Wicinski and Gray to be given additional time to take exams due to his disabilities but was denied even though the Defendant was aware of his disabilities. (Plf. Depo. 57-60).  Plaintiff specifically expressed to Defendant his apprehension of not being able to complete exams within the time restraints and tried himself to implement a plan wherein he could pass within the denial of his accommodation of additional time by requesting that the most time-consuming portion of an exam be saved until the last of the exam. (Plf. Depo. 57, 60-61; Ex. A and B).  Plaintiff even went so far as to provide a five page form stating the specifics of why he needed additional time and expressed that the Defendant knew of his conditions. (Plf. Depo. 44, 56-57; Ex. B).

Again, in the Fall of 2017, Plaintiff made his neurosciences and physical modalities professors aware of his concerns of the practical examinations and he was advised by his professor that he needed to be more confident in his knowledge, which can only come from repetition and

Plaintiff's Response to Defendants' Motion for Summary Judgment

study. (Plf. Depo. 39-40).  Plaintiff was severely prejudiced by Defendant's intentional, continuous denial to accommodate Plaintiff by allowing him additional time to complete his clinical exams. (Plf. Depo. 40).  Had Defendant given Plaintiff more time to complete his examinations, Plaintiff's grades would not have been lowered due to Plaintiff not having time to complete the exams.

To establish a right to compensatory damages under § 504 of the RA, a plaintiff must prove: (1) that he is a qualified individual with a disability,12 (2) who was excluded from participation in or denied the benefits of the defendant's services, programs, or activities, or otherwise discriminated against, (3) on account of his disability, and (4) that the exclusion or denial was the result of intentional discrimination. *Martin v. Halifax Healthcare Sys*., 621 Fed. Appx. 594, 601 (11th Cir. 2015). A plaintiff can establish intentional discrimination with evidence that the defendant was "'deliberately indifferent' to [his] rights under the ADA and the Rehab[ilitation] Act" because the defendant knew that a rights violation was "substantially likely," but "fail[ed] to act on that likelihood." *Id.* at 603-04 (citation omitted).  Moreover, to hold an organization liable, the defendant's deliberate indifference must have been through "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf [and who] has actual knowledge of discrimination in the [defendant's] programs and fails to adequately respond." *Segev v. Lynn Univ*., No. 19-CV-81252-Can, 2021 U.S. Dist. LEXIS 37731, at *28 (S.D. Fla. Feb. 26, 2021).  Deliberate indifference requires that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond." *Id*. at *29.

Plaintiff can establish that Defendant's actions were intentional discrimination by acting in a manner "'deliberately indifferent' to [his] rights under the ADA.  Plaintiff is entitled to monetary

Plaintiff's Response to Defendants' Motion for Summary Judgment

relief in the form of compensatory damages, attorneys' fees and costs for injury to his profession and emotional damages based on the Defendant (persons with key decision-making authority in the administrative process) denying Plaintiff an accommodation of more time to complete his exams, use of paper and pencil. Additionally, evidence shows that the Defendant's policies and procedures for ADA compliance are deficient and contributed to the miscommunications between Plaintiff, the administration and disability services.  Professors nor the administration or decision-makers advised Plaintiff that he was required to go to the USA's disability services in order for him to receive an accommodation for his disabilities even though they were all clearly aware of his disabilities. (Plf. Depo. 41).  The disability office is not even located on the campus (Plf. Depo. 92).  Employees in the administration building did not even know where the offices were located (Plf. Depo. 92).  The disability officer, Ryan Davis, is over all three campuses and was completely unaware of Plaintiff's disabilities and inadequately handled Plaintiffs requests for accommodations. (Plf. Depo. 92, 94-95, 99).   Davis failed to even return a response call to Plaintiff's two voicemails wherein he was seeking disability assistance. (Depo. 98-99, 101-102).

Therefore, in view of the evidence and in keeping with the obligation to view the evidence in the light most favorable to the non-moving party, the court concludes that a jury should decide whether Defendant discriminated against Plaintiff because of his disability.

B.   PLAINTIFF CAN ESTABLISH A CLAIM FOR BREACH OF CONTRACT, NEGLIGENCE AND DEFAMATION

1.   DEFENDANT IS LIABLE FOR BREACH OF CONTRACT

"Under Florida law, the legal relationship between a private university and a student is 'solely contractual in character.'" *Gibson v. Lynn Univ., Inc*., No. 20-CIV-81173-RAR, 504 F. Supp. 3d 1335, 2020 WL 7024463, at *2 (S.D. Fla. Nov. 29, 2020) (J. Ruiz) (*quoting Sirpal v. Univ. of Miami,* 509 F. App'x 924, 929 (11th Cir. 2013) an*d Jallali v. Nova Se. Univ., Inc.*, 992 So.

Plaintiff's Response to Defendants' Motion for Summary Judgment

2d 338, 342 (Fla. Dist. Ct. App. 2008)). "It is generally accepted that the terms of that contractual relationship 'may be derived from university publications such as the student handbook and catalog.'" *Orzechowitz v. Nova Se. Univ.,* No. 13-62217-CIV, 2014 U.S. Dist. LEXIS 43674, 2014 WL 1329890, at \*3 (S.D. Fla. Mar. 31, 2014) ("[A] student handbook or publication can create contractual obligations on the part of university that are not necessarily limited to the 'service' of providing a college degree."); *see also McCawley v. Universidad Carlos Albizu, Inc.,* 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006). A jury must interpret the parties' conduct to determine if a contract was in fact formed. A "genuine dispute of material fact as to whether there was a meeting of the minds precluded summary judgment on implied-in-fact contract". *IDEARC Media LLC v. TSG Media, Inc.,* No. 09-60531-CIV, 2010 WL 11505563, at \*4 (S.D. Fla. Sept. 30, 2010).

Plaintiff contends through his reliance on USA's policies, enrollment and tuition payments, he and the Defendant were in a contractual relationship which Defendant breached by denying Plaintiff his accommodations and education. In Florida, a breach of contract claim requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1272 (11th Cir. 2009). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Datto v. Ass'n of Am. Med. Colls.*, No. 18-CV-21053, 2019 U.S. Dist. LEXIS 97879, at \*23 (S.D. Fla. June 8, 2019). A claim based on an oral contract is subject to the same requirements. For an oral contract to have achieved a sufficient specification of the essential terms, the parties must have "mutually assented to a certain and definite proposition and left no essential terms open." *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc*., 607 F.3d 742, 746 (11th Cir. 2010) (citations omitted); *Datto v. Univ. of Miami*, No. 18-CV-21053, 2020 U.S. Dist. LEXIS 131697, at \*59 (S.D. Fla. July

Plaintiff's Response to Defendants' Motion for Summary Judgment

23, 2020). Additionally, to properly plead a contract, a party must plead "underlying facts showing mutual assent, such as the specific people that negotiated the alleged oral agreement and when this agreement was entered into." *PNCEF, LLC v. Highlander Enters., LLC*, No. 09-80974-CIV, 2010 U.S. Dist. LEXIS 150658, 2010 WL 11504754 at *3 (S.D. Fla. Mar. 2, 2010); *Datto v. Univ. of Miami,* No. 18-CV-21053, 2020 U.S. Dist. LEXIS 131697, at *59 (S.D. Fla. July 23, 2020). Here, Plaintiff and Defendant entered into a contractual agreement when he paid monies for his education. The terms of payment were clear, the benefit of the bargain was clear (an education), and reliance was clear (tuition equaled education). There was mutual assent of the terms of the agreement.

## 2.  DEFENDANT IS LIABLE FOR DEFAMATION AND NEGLIGENCE

To state a defamation claim, a plaintiff must show the following elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018). Generally, defamatory statements tend to subject the plaintiff to hatred, distrust, ridicule, disgrace, or tend to injure the plaintiff in his profession. A*stro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1301 (M.D. Fla. 2013).

The law is well established that to bring a claim for negligence, a plaintiff must allege (1) duty, (2) breach, (3) cause, and (4) harm to the claimant. *Perry v. Schumacher Grp. of Louisiana*, 809 F. App'x 574, 582 (11th Cir. 2020) (citing Williams v. Davis, 974 So. 2d 1052, 1056 (Fla. 2007)). . In negligence law, the concept of "duty" has two components: (1) the relationship that justifies placing a requirement of care upon the defendant, and (2) the general standard of care that defines the risks to be foreseen by the defendant and the level of care to be imposed upon the

Plaintiff's Response to Defendants' Motion for Summary Judgment

defendant. Difficult economic loss cases all seem to examine the relationship between the parties to determine whether it warrants creating a duty to protect economic interests outside contract and statutory law. *Tank Tech, Inc. v. Valley Tank Testing, LLC.*, 244 So. 3d 383, 393 (Fla. Dist. Ct. App. 2018) (*quoting Monroe,* 746 So. 2d at 534, n.6) (citations omitted).

Defendant's actions in knowing of Plaintiff's disabilities, not advising, assisting, or approving Plaintiff's accommodations were negligent. Defendant's deficient policies and procedures caused Defendant to be negligent. Defendant's termination letter (Ex. E) as written was negligent in that it contained mistruths of Plaintiff's professional behaviors and academic integrity. The Florida Supreme Court has described the "undertaker's doctrine" as follows: "Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service -- i.e., the 'undertaker' -- thereby assumes a duty to act carefully and to not put others at an undue risk of harm." *Id. (quoting Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). "The undertaker is subject to liability if: (a) he or she fails to exercise reasonable care, which results in increased harm to the beneficiary; or (b) the beneficiary relies upon the undertaker and is harmed as a result." *Muchnick, 245 So. 3d at 981 (quoting Limones v. Sch. Dist. of Lee Cty.*, 161 So. 3d 384, 388 n.3 (Fla. 2015)).

Defendant cannot argue that their actions did not injure the plaintiff in his profession. After being terminated by the Defendant from the physical therapy program, he did not apply to any other medical programs at other universities due to the fear that the termination on his record, the accusations of questionable professional behaviors and academic integrity, and the vigorous criteria of admission with a clean record would prevent other educational programs from fairly awarding him acceptance into their medical programs. (Plf. Depo. 151-52). Due to this fear of not being admitted into another physical therapy program, Plaintiff was forced to change his field of

Plaintiff's Response to Defendants' Motion for Summary Judgment

study into a master's in economics even though he had received passing grades in master's in physical therapy. (Plf. Depo. 151-52) (*See* transcript attached hereto and incorporated herein as Exhibit E).

When starting into the master's in economics program at Harvard, he told his advisor that he was currently working to absolve the letter on his record for physical therapy from USA that pertained to his questionable academic performance, professional behaviors and academic integrity. (Plf. Depo. 154-55). (*See* USA termination letter attached hereto and incorporated herein as Exhibit F). After Plaintiff had completed two classes for which he received an A and B, he was told by his advisor at Harvard because he had not resolved his termination at USA and removal of the termination letter from his records, that he was *not accepted into the master's in economics program and Plaintiff was forced to stop his classes and removed as a student from the Harvard University*. (Plf. Depo. 154-55). USA's letter had to be stricken from Plaintiff's educational record before he was allowed to complete the provisional conditions for acceptance into the Harvard program. (Plf. Depo. 155). Therefore, it is unquestionable that Plaintiff has been injured in his profession, monetarily and mentally by USA's termination letter accusing him of questionable academic performance, professional behaviors, and academic integrity. (Ex. F).

C.     DEFENDANT IS NOT ENTITLED TO QUALIFID PRIVILEGE

The qualified privilege entails five elements: "(1) Good faith; (2) an interest to be upheld; (3) a statement limited in its scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner." *Axelrod v. Califano*, 357 So. 2d 1048, 1051 (Fla. 1st DCA 1978). D*eMartini v. Town of Gulf Stream*, No. 16-81371-CIV, 2016 U.S. Dist. LEXIS 181524, at *24 (S.D. Fla. Dec. 22, 2016). Defendant fails to meet any one of the five elements of qualified privilege. Defendant's termination letter which is forever a prejudicial part of his educational record improperly,

Plaintiff's Response to Defendants' Motion for Summary Judgment

inappropriately states Plaintiff's failed academic performance, professional behaviors and academic integrity.  (Plf. Depo. 154-55; Ex. F).

## IV.     CONCLUSION

Plaintiff has met the burden of proving that he is entitled to relief on all claims sought before this honorable Court.  All allegations and facts are to be waived in favor of the Plaintiff in deciding on summary judgment. Inasmuch as, the foregoing facts are in dispute, the Plaintiff will be severely prejudiced if the disputed facts are not presented to a jury for adjudication.  Therefore, the Plaintiff respectfully prays to this honorable Court to deny Defendant's Motion for Summary Judgment in its entirety and set this matter for trial.

Respectfully submitted this the 9th day of September, 2022.

LAW OFFICES OF KEITH ALTMAN, PLLC

*/s/ Kimberly R. Dodson*
Kimberly R. Dodson
*kimberlydodson@kaltmanlaw.com*
Keith Altman
*keithaltman@kaltmanlaw.com*
33228 West 12 Mile Road - Suite 375
Farmington Hills, Michigan 48331
(248) 987-8929

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via ECF/Electronic filing to all counsel of record on this 9th day of September, 2022.

*/s/ Kimberly R. Dodson*
Of Counsel

Plaintiff's Response to Defendants' Motion for Summary Judgment

# EXHIBIT A

## <u>Ortho First Retake Practical Examination Process</u>

Please email both the lead faculty instructor (David Kempfert) and the instructor who tested you within 1-2 business days after failing the exam to submit a written plan of remediation that will effectively prepare you for the first retake practical examination. If you have questions about your exam feedback please direct those solely to the examiner you tested with.

The faculty instructors will review (via email) the student's remediation plan and when approved schedule the 1st retake practical examination.

The highest grade awarded for passing the 1st re-take practical examination will be 75%.

The below template is intended to assist in your development of the written plan for remediation.

## Student Written Plan of Remediation

**Student Name**: Luke Nguyen
**Date:** April 14th, 2018
**Name of Academic Advisor:** Dr. Debra Gray
**Remediation Course & Instructor:** PHT5312C001 Musculoskeletal I: Orthopaedics; Dr. David Kempfert

**Identify your area(s) of weakness/ challenges (provide detail and be comprehensive)**

Time Management: I was unable to perform the last skill due to not managing my time in an efficient manner, particularly with respect to manipulations which are more time intensive.

**Identify a strategy/remediation plan for academic success (provide a timeline with dates):**
I will address the weakness identified above by working to improve expediency of all skill demonstrations required for this practical, particularly with manipulations. I plan to specifically time each technique with the goal of completing each skill demonstration within one minute or less by replicating testing conditions during practice to include the random selection of 2 manipulations, 1 palpation, and 2 MSTT/Special skill demonstrations. I plan performing this self-assessment and refinement for a minimum of 2 hours every day (starting today on April 14th, 2018) to achieve this goal before the next retake attempt of this practical.

- Luke Nguyen, SPT
April 14th, 2018

# EXHIBIT B

| | |
|---|---|
| **From:** | Luke Nguyen |
| **Sent:** | Monday, April 16, 2018 1:17 PM |
| **To:** | David Kempfert; Debra Gray; Margaret Wicinski |
| **Subject:** | RE: Nguyen - Resubmission of retake remediation plan |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Dr. Kempfert, Dr. Gray, Dr. Wincinski,

- I acknowledge the scheduled day and time for the appointment to be at Tuesday, April 17th from 1:00-1:30pm.

- I was initially surprised with the e-mail reply to my first submission of my practical retake remediation form and wished to address this in our meeting on April 11th to gain a greater understanding Dr. Kempfert's perspective. Though I did not specifically get to ask everything I had intended in the earlier meeting on April 11th, Dr. Kempfert did address all of what I wished to learn from the meeting concerning his interpretation of my initial practical retake submission as "contentious", "unprofessional", with an "evasive" tone.

I hope by the conclusion of tomorrow's meeting we can clear up any misconceptions between Dr. Kempfert and myself, identify my weaknesses of communication/professionalism, and establish a personal plan to remediate/optimize presentation of those traits as soon as possible with a discourse of the following topics:

1) Issues of miscommunication and professionalism
   - o My cultural perspective
   - o Prior communication with other professors (with examples)
   - o Answer any additional questions from presented information and application to prior concerns and/or future communication
   - o Present/receive solutions to prevent reoccurrence throughout USA career

2) Inquire about privacy rights (if there is enough time)

Respectfully,

Luke Nguyen, SPT

Sent from Mail for Windows 10

---

**From:** David Kempfert
**Sent:** Saturday, April 14, 2018 8:54:50 AM
**To:** Luke Nguyen; Debra Gray; Margaret Wicinski
**Subject:** RE: Nguyen - Resubmission of retake remediation plan

Luke,
Thank you for the email. Dr. Gray and I can arrange to meet on Tuesday, April 17th from 1:00p-1:30p. Please note the following:

1

USA/Nguyen 001061

- Reply to all with acknowledgement of the scheduled day/time.
- Provide a list of the questions you would like addressed.

Have a wonderful day,

*David Kempfert*
*DPT, OTR, L/ATC, OCS, SCS, FAAOMPT*
*Assistant Professor*
*Board Certified Orthopaedic Specialist*
*Board Certified Sports Specialist*
*Fellowship trained AAOMPT*
*Manual Therapist*
*University of St. Augustine for Health Sciences*
*1 University Blvd*
*St. Augustine, FL 32086*
*dkempfert@usa.edu*
*904-826-0084 x1333*

---

**From:** Luke Nguyen <l.nguyen4@usa.edu>
**Sent:** Friday, April 13, 2018 5:33 PM
**To:** Debra Gray <DGray@usa.edu>; David Kempfert <dkempfert@usa.edu>; Margaret Wicinski <MWicinski@usa.edu>
**Subject:** Re: Nguyen - Resubmission of retake remediation plan

Dr. Kempfert,
Thank you for your communication. I have replied to your e-mail regarding the practical retake procedure as requested. As for the appointment, I would like to request a meeting with yourself and Dr. Gray at 1:00-2:30 PM on Tuesday, April 17th.

Respectfully,
Luke Nguyen, SPT

---

**From:** Debra Gray
**Sent:** Friday, April 13, 2018 9:51:02 AM
**To:** David Kempfert; Luke Nguyen; Margaret Wicinski
**Subject:** RE: Nguyen - Resubmission of retake remediation plan

I cannot do 4-4:30 on Tuesday; I am available 11:30 and 1:00 of those times only.

Debra L Gray, PT, DHSc, DPT, MEd
Board-Certified Clinical Specialist in Geriatric Physical Therapy
Manager, Flex DPT Programs
Associate Professor
University of St Augustine for Health Sciences

904-770-3562
dgray@usa.edu

USA/Nguyen 001062

**From:** David Kempfert
**Sent:** Friday, April 13, 2018 9:39 AM
**To:** Luke Nguyen <l.nguyen4@usa.edu>; Debra Gray <DGray@usa.edu>; Margaret Wicinski <MWicinski@usa.edu>
**Subject:** RE: Nguyen - Resubmission of retake remediation plan

Good morning Luke. I wanted to take a moment to follow up with you regarding the email sent below. Our schedules next week are beginning to fill up. I no longer am available next week Tuesday at noon. If you would still like to meet with Dr. Gray and I, please provide us with the time that would work best for your schedule on Tuesday, April 17th. The times you may chose from are as follows:

- 11:30a-noon
- 1:00p-2:30p
- 4:00p-4:30p

Dr. Wicinski and I are also waiting for your acknowledgement to the email sent yesterday morning regarding the practical retake scheduled for tomorrow morning at 7:30a.

Have a good day,

*David Kempfert*
*DPT, OTR, L/ATC, OCS, SCS, FAAOMPT*
*Assistant Professor*
*Board Certified Orthopaedic Specialist*
*Board Certified Sports Specialist*
*Fellowship trained AAOMPT*
*Manual Therapist*
*University of St. Augustine for Health Sciences*
*1 University Blvd*
*St. Augustine, FL 32086*
*dkempfert@usa.edu*
*904-826-0084 x1333*

---

**From:** David Kempfert
**Sent:** Wednesday, April 11, 2018 5:58 PM
**To:** 'Luke Nguyen' <l.nguyen4@usa.edu>; Debra Gray <DGray@usa.edu>; Margaret Wicinski <MWicinski@usa.edu>
**Subject:** RE: Nguyen - Resubmission of retake remediation plan

Hello Luke. Thank you for your revised Remediation Plan. I would also like to say thank you for the significant improvement with regard to tone and professionalism of your plan. Your Remediation Plan is approved. I do have one question with regards to a statement you included in your plan. You stated:
*"I also plan to inquire as to the availability of additional test materials from the grader"*
Are you inquiring about additional textbooks? I would recommend you continue to reference the materials outlined within the course syllabus, those provided within the online platform and verbal instruction from chats/labs. Please let me know if this addresses your question.

USA/Nguyen 001063

I am happy to meet with you next week Tuesday (April 17th) if still desired. The only availability that aligns with my schedule, and Dr. Gray's, is between 11:30a-2:30p. Please let us know if you would still like to meet, and if so, please submit your questions ahead of time.

I will be in contact tomorrow regarding the practical retake schedule.

Have a great day,

*David Kempfert*
*DPT, OTR, L/ATC, OCS, SCS, FAAOMPT*
*Assistant Professor*
*Board Certified Orthopaedic Specialist*
*Board Certified Sports Specialist*
*Fellowship trained AAOMPT*
*Manual Therapist*
*University of St. Augustine for Health Sciences*
*1 University Blvd*
*St. Augustine, FL 32086*
*dkempfert@usa.edu*
*904-826-0084 x1333*

---

**From:** Luke Nguyen <l.nguyen4@usa.edu>
**Sent:** Wednesday, April 11, 2018 5:39 PM
**To:** David Kempfert <dkempfert@usa.edu>; Debra Gray <DGray@usa.edu>; Margaret Wicinski <MWicinski@usa.edu>
**Subject:** Nguyen - Resubmission of retake remediation plan

Dr. Kempfert,

Attached please find my resubmitted Practical Retake and Remediation Plan.

Regards,

Luke Nguyen, SPT

Sent from Mail for Windows 10

USA/Nguyen 001064

# EXHIBIT C

**Jessica Waters**

---

| | |
|---|---|
| **From:** | Luke Nguyen |
| **Sent:** | Thursday, December 6, 2018 2:52 PM |
| **To:** | Margaret Wicinski |
| **Subject:** | Follow-up |

Dr. Wicinski,

As previously discussed I had follow ups with my PCP and psychiatrist today. While I did have a brief anxiety attack last night, its severity was mild and was alleviated with the previously described Atavan which convinced both professionals that I am okay to continue with school. My psychiatrist also recommends that I explore the option of time and a half for examination in the future (which I will research USA's requirements and get back to her with a scheduled appointment on 12/10/2018.)

I have submitted an absence form which has both Mock Clinic and Cardiopulmonary classes listed for the duration of the weekend of 12/1-12/3 to Dr. Gray. I can provide an additional copy to you by request.

I have been scheduled to make up the missed Cardiopulmonary lab session tomorrow at 2-4PM at Room 102. I have been checking the platform and have not seen specific scheduling for this weekend. If it has been posted, could you please direct me to it?

Again thank you for your time and consideration. Please let me know if there is anything else you inquire regarding the situation.

Respectfully,
Luke Nguyen, SPT
University of Saint Augustine, Flex DPT Program

USA/Nguyen 001037

# EXHIBIT D

| | |
|---|---|
| **From:** | Disability (USA) |
| **To:** | Luke Nguyen |
| **Subject:** | RE: Reaching out |
| **Date:** | Thursday, January 24, 2019 11:09:16 AM |
| **Attachments:** | Professional Documentation Information.pdf |
| | Reasonable Accommodations Request.pdf |

Luke,

I got your voice mail on 1/11 and attempted to call you back a few times with no luck. Please send your accommodation request and any documentation you have over so I can review it. Once I see it I can help. Also if you return to our last email the second attachment describes what information is needed (attached again here for you). I hope this helps.

Best,
Ryan W. Davis, M.A.
737.202.3373 (office) x3173

---

**From:** Luke Nguyen <l.nguyen4@usa.edu>
**Sent:** Tuesday, December 11, 2018 2:28 PM
**To:** Ryan Davis <RDavis@usa.edu>
**Subject:** Reaching out

Mr. Davis,

My name is Luke Nguyen, Flex student of the University of Saint Augustine (Saint Augustine campus. I have recently reached out to you on the phone concerning my recent complications with disabilities to which the following ideas were discussed:

- I would be e-mailed student disability documentation to be completed by me psychiatrist to my student e-mail at l.nguyen4@usa.edu. I have not received this documentation as of writing.

- Given the circumstances of Mock Clinic and how I could not pass the course unless passing the final exam on the first attempt, I was recommended by you to speak with my program director to "file an appeal" or something to that effect.

   - I was unable to find an "appeals form" on our portal or any relevant information in the student handbook. The soonest I can could meet with my program director/adviser (Dr. Gray) is on December 18th, 2018. Would this be too late and what can I do?

- I am in the process of focusing on my other classes with the intent to pass. I was also unable to find additional information regarding the committee

KAL000052

Please let me know if there's anything that I missed or should be made aware of. I look forward to working with you in the future.


Respectfully,

Luke Nguyen, SPT

University of Saint Augustine, Flex DPT Program

KAL000053

# EXHIBIT E

**University of St. Augustine for Health Sciences**

**ID** : 103891
**Name** : Luke Nguyen
**Address** : ███████████

Print Date: 1/8/2019

---

***First Professional Division***
  ***Advisors*** : Debra Lynn Gray

| Course Number | Title | CR Type | Gra Rpt | Att | Ernd | HGpa | Q.Pts | GPA |
|---|---|---|---|---|---|---|---|---|
| **2015-2016 Academic Year : Pre Summer Start-Spring** | | | | | | | | |
| NSO 5000 | New Student Orientation | PF | NG | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Term Totals : | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.0000 |
| | Career Totals : | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.0000 |
| **2015-2016 Academic Year : Summer** | | | | | | | | |
| HSC 5003 | Critical Thinking I | LT | A | 1.00 | 1.00 | 1.00 | 4.00 | |
| HSC 5010 | Scientific Inquiry | LT | B+ | 1.00 | 1.00 | 1.00 | 3.50 | |
| HSC 5100C | Applied Human Anatomy | LT | C+ | 4.00 | 4.00 | 4.00 | 10.00 | |
| HSC 5213C | Skills and Procedures | LT | B | 4.00 | 4.00 | 4.00 | 12.00 | |
| HSC 5741C | Applied Medical Physiology | LT | B+ | 4.00 | 4.00 | 4.00 | 14.00 | |
| PHT 5006C | Massage and Soft Tissue P | LT | B | 1.00 | 1.00 | 1.00 | 3.00 | |
| PHT 5802 | Physical Therapist Practice | LT | A | 2.00 | 2.00 | 2.00 | 8.00 | |
| | Term Totals : | | | 17.00 | 17.00 | 17.00 | 54.50 | 3.2058 |
| | Career Totals : | | | 17.00 | 17.00 | 17.00 | 54.50 | 3.2058 |
| **2016-2017 Academic Year : Fall** | | | | | | | | |
| HSC 5122C | Biomechanics | LT | W | 0.00 | 0.00 | 0.00 | 0.00 | |
| HSC 5416 | General Pathology | LT | W | 0.00 | 0.00 | 0.00 | 0.00 | |
| HSC 5700 | Wellness and Prevention in | LT | W | 0.00 | 0.00 | 0.00 | 0.00 | |
| PHT 5132C | Musculoskeletal I: Orthopa | LT | W | 0.00 | 0.00 | 0.00 | 0.00 | |
| PHT 5225C | Physical Modalities/Integun | LT | W | 0.00 | 0.00 | 0.00 | 0.00 | |
| PHT 5234C | General Therapeutic Exerci | LT | W | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Term Totals : | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.0000 |
| | Career Totals : | | | 17.00 | 17.00 | 17.00 | 54.50 | 3.2058 |

---

***First Professional Division***
  ***Advisors*** : Debra Lynn Gray

| Course Number | Title | CR Type | Gra Rpt | Att | Ernd | HGpa | Q.Pts | GPA |
|---|---|---|---|---|---|---|---|---|
| **2016-2017 Academic Year : Spring** | | | | | | | | |
| HSC 5700 | Wellness and Prevention in | LT | B+ | R | 3.00 | 3.00 | 3.00 | 10.50 |
| HSC 5800 | Gerontology | LT | A | | 3.00 | 3.00 | 3.00 | 12.00 |
| | Term Totals : | | | 6.00 | 6.00 | 6.00 | 22.50 | 3.7500 |
| | Career Totals : | | | 23.00 | 23.00 | 23.00 | 77.00 | 3.3478 |
| **2016-2017 Academic Year : Summer** | | | | | | | | |
| HSC 5122C | Biomechanics | LT | B+ | R | 4.00 | 4.00 | 4.00 | 14.00 |
| HSC 5416 | General Pathology | LT | A | | 3.00 | 3.00 | 3.00 | 12.00 |
| PHT 5405 | Psychosocial & Ethical Asp | LT | A | | 3.00 | 3.00 | 3.00 | 12.00 |
| | Term Totals : | | | 10.00 | 10.00 | 10.00 | 38.00 | 3.8000 |
| | Career Totals : | | | 33.00 | 33.00 | 33.00 | 115.00 | 3.4848 |
| **2017-2018 Academic Year : Fall** | | | | | | | | |
| HSC 5151C | Clinical Neurosciences | LT | C | | 5.00 | 5.00 | 5.00 | 10.00 |
| PHT 5225C | Physical Modalities/Integun | LT | B | R | 4.00 | 4.00 | 4.00 | 12.00 |
| | Term Totals : | | | 9.00 | 9.00 | 9.00 | 22.00 | 2.4444 |
| | Career Totals : | | | 42.00 | 42.00 | 42.00 | 137.00 | 3.2619 |
| **2017-2018 Academic Year : Spring** | | | | | | | | |
| PHT 5132C | Musculoskeletal I: Orthopa | LT | C+ | R | 4.00 | 4.00 | 4.00 | 10.00 |
| PHT 5234C | General Therapeutic Exerci | LT | C | R | 4.00 | 4.00 | 4.00 | 8.00 |
| | Term Totals : | | | 8.00 | 8.00 | 8.00 | 18.00 | 2.2500 |
| | Career Totals : | | | 50.00 | 50.00 | 50.00 | 155.00 | 3.1000 |

---

Page : 1 of 2

DEFENDANT'S
EXHIBIT NO. 2
FOR IDENTIFICATION
DATE: 5/19/22   RPTR: RF
PENGAD 800-631-6989

USA/Nguyen 000034

# EXHIBIT F

# UNIVERSITY OF ST. AUGUSTINE
## FOR HEALTH SCIENCES

December 21, 2018

Via Email
l.nguyen4@usa.edu

Student:   Luke Nguyen
ID:          103891

Subject: Notice of Dismissal

Dear Luke,

The University of St. Augustine for Health Sciences holds every student to high standards. I regret to inform you that your academic performance has not met the requirements for continued progression in the degree program.

As stated in our student handbook, any student who receives two grades of a D in one trimester, an F in any course, or a second D in the program will be dismissed from USAHS. If you do not believe your grade is correct, you may appeal your grade to your instructor. Please refer to the process in the Student Handbook. Based on your final grade(s) for the following courses, you have been dismissed:

### PHT 5   133   C   001

If you would like to appeal this decision, please refer to the Student Handbook to learn about the process. If you choose to appeal, you must email your appeal letter within 2 business days of this dismissal letter (01/03/2019). All appeal correspondence should be emailed to registrar@usa.edu. Should you choose to appeal, once I receive your letter and get confirmation from the academic appeal committee, I will email you the date and time of the appeal meeting.   The next scheduled appeal meeting is 01/10/2019.

Sincerely,
Diane Rondinelli – Registrar
registrar@usa.edu
904-826-0084, ext. 1600

cc:      Program Director
         Financial Aid
         Bursar
         Student File
         Student Advisor
SA: Cynthia Edwards – cedwards1@usa.edu; MI:  Juliet Henry-Pitter – jhenrypitter@usa.edu;
AU: Kailyn Cannata – kcannata@usa.edu;  SM:  David Schoenherr – dschoenherr@usa.edu
MHA/MHS:  Sherrie Jensen – sjensen@usa.edu;  PP OTD/DPT/EdD: Frank Bennett – fbennett@usa.edu



DEFENDANT'S
EXHIBIT NO. _30_
FOR IDENTIFICATION
DATE: 5/19/22   RPTR: _RF_

USA/Nguyen 001065