UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LUKE NGUYEN,

      Plaintiff,                         CASE NO.: 3:21-cv-00173-MMH-MCR

v.

UNIVERSITY OF ST. AUGUSTINE
FOR HEALTH SCIENCES, LLC.,

      Defendant.

_____/

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Middle District of Florida Local Rule 3.01(d), Defendant, University of St. Augustine for Health Sciences, LLC ("USA"), files this Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 57) ("Response"). USA requests this Court grant its Motion for Summary Judgment (Doc. 52) and offers the following:

### I.    Memorandum of Law

#### A. Plaintiff misrepresents that he requested additional time on examinations prior to December 2018

Throughout his Response, Plaintiff asserts as "undisputed facts" that he requested additional time on his examinations. However, a review of the record evidence reveals this statement to be demonstrably false. By way of example, in paragraph 18, Plaintiff cites to page 38 of his deposition and states that his "biomechanics instructor dismissed his requests for additional time for laboratory examinations."[1] However, Plaintiff actually

_____

[1] (Doc. 57) Response at 3.

testified:

> I had spoken to my professor at that time for biomechanics, since it did have a laboratory component and a practical component, that I had concerns about the amount of time that was given for the examination. And he -- he asked me why, and I referred to him with -- I explained to him my generalized anxiety, how it was applicable to where, for 1 example, if I was asked to identify a certain part of anatomy that was in the practical exam, it would take me significantly more time because I was -- because of my anxiety, I would think of everything multiple times before answering what it was, and the fact that the examination is -- you have 30 seconds to look at a part and identify. He dismissed it and he recommended that I -- that I practice. He made it known that as a student, that I live also close by, I have the opportunity to still come on campus at night and can prepare for the examination by coming in at night when the university is open, when the cadaver lab is open, and try to be more familiar and be more assertive of my knowledge.[2]

Similarly, in paragraph 22, Plaintiff asserts that he repeatedly asked multiple professors to be given additional time on exams due to his disabilities but was denied.[3]  However, there is no such testimony in the record cited by Plaintiff.  At most, Plaintiff testified he spoke to Dr. Wicinski on a prior occasion that "time management was an issue . . . under the *assumption* that it was in [the] context of [his] learning disabilities."[4]  Notably, Plaintiff never testified that he requested extended time on any examination prior to December 2018.  To the contrary, Plaintiff testified that prior to his December 6, 2018 email, he had never spoken to anyone at USA about time and a half on his exams.[5]

## B. The fact that Plaintiff informed his professors of his medical diagnosis does not trigger any duty to accommodate

In his Response, Plaintiff places the burden on USA to identify and provide

---

[2] (Doc. 53-1) May 19, 2022 Deposition of Luke Phuoc Nguyen (hereinafter, "Plaintiff's Depo.) at 11. Because Plaintiff's deposition transcript was previously filed, for the purposes of this Reply, Defendant refers to the page numbers at the top of the page on the file stamped copy.
[3] (Doc. 57) Response at 4.
[4] (Doc. 53-1) Plaintiff's Depo. at 60 (emphasis added).  Additional mischaracterization of record evidence in Plaintiff's Response can be found at paragraphs 24, 25, 34, 38, 48, and 49, as well as in the memorandum of law on pages 13, 15, and 19.
[5] (Doc. 53-1) Plaintiff's Depo. at 22.

accommodations to Plaintiff upon notification that he was diagnosed with a medical condition that could be a disability. Plaintiff states that he, "relied on [USA] to advise him of what course of action to take with this medical disability diagnoses in continuing his education with [USA]" and he "deferred to" USA "to accommodate his newly discovered disabilities."[6] Plaintiff's argument is contrary to clearly established law.

"The plaintiff bears the burden of identifying a reasonable accommodation." *Goldberg v. Fla. Int'l Univ.* 838 Fed. Appx. 487, 492 (11th Cir. 2020). In seeking an accommodation "[t]he initial burden is on the student, who must identify his disability, provide supporting medical documentation, and make a case for specific accommodations." *Wilf v. Bd. of Regents of the Univ. Sys. of Georgia*, No. 109CV01877RLVGGB, 2012 WL 12888680, at *18 (N.D. Ga. Oct. 15, 2012); *see also Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010). After Plaintiff has provided such information, "the school is required to consider the request and make a reasoned decision to grant or deny it." *Id.* at *19. Indeed, "[t]he duty to provide a reasonable accommodation arises when a *specific demand* for an accommodation has been made." *Doe v. Univ. of Miami*, 446 F. Supp. 3d 1000, 1010 (S.D. Fla. 2020) (emphasis added). As outlined in USA's Motion for Summary Judgment, Plaintiff's discussions with professors in which his disabilities were referenced were informal, peripheral, and generally in the context of Plaintiff discussing his time management.[7] Nothing in those conversations triggered USA's duty to provide Plaintiff with a reasonable

---

[6] (Doc. 57) Response at 12.
[7] (Doc. 53-1) Nguyen Depo. at 39-41; 49-50.

accommodation. Furthermore, to the extent Plaintiff requested accommodations after failing his exams, retroactive accommodations are not required by law. *See Off. Of Senate Sergeant at Arms v. Off. Of Senate Fair Emp. Pracs.,* 95 F. 3d 1102, 1107 (Fed. Cir. 1996). Because the record evidence establishes that Plaintiff never requested a reasonable accommodation, summary judgment should be entered for USA. *See Doe v. Univ. of Miami,* 446 F. Supp. 3d 1000, 1010 (S.D. Fla. 2020) (holding that the defendant "did not refuse to accommodate [the plaintiff's] needs in a way that amounted to disability discrimination under the Rehabilitation Act because the record did not demonstrate that the plaintiff ever made "a specific demand for an accommodation . . . ."); *Schandolph v. Bd. of Regents of Univ. Sys. of Georgia*, No. CV417-247, 2019 WL 6041071, at *9 (S.D. Ga. Nov. 13, 2019).

### C. Plaintiff's failure to follow USA's policies for requesting accommodations is, by itself, fatal to his claim

In his Response, Plaintiff states, "Defendant's policies and procedures require students to seek out and request from the administration to be counseled regarding the process for requesting an accommodation before a student will receive assistance regarding their disabilities."[8]   This is an inaccurate representation of USA's policy. Moreover, the record evidence establishes that USA maintained a policy that set forth specific procedures for students to request accommodations.[9] USA's policy requires a student to submit a Reasonable Accommodation Request Form and appropriate

---

[8] (Doc. 57) Response at 1.
[9] *See* (Doc. 53-1) Nguyen Depo. at 145 (Exhibit 36).

documentation to disability@usa.edu.[10] While an academic advisor could provide clarification regarding the process for requesting accommodations, Disability Services reviewed requests and notified students of USA's decision.[11] Notwithstanding Plaintiff's claims that he was unaware of this policy,[12] the undisputed evidence shows that Plaintiff was informed of this process on at least two occasions: (1) at his enrollment and (2) through his Mock Clinic Syllabus provided in or around August 2018.[13] In addition, despite claiming he was unaware of the process, Plaintiff inexplicably knew to contact Disability Services when exploring accommodations after his panic attack in December 2018.[14]   It is undisputed that Plaintiff first contacted USA's Disability Services in December 2018, but never provided USA with the required accommodation paperwork.[15]

"[A] disabled student's disregard of written procedures can certainly be fatal to [his] subsequent discrimination claim." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010); *but see Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1296 (S.D. Fla. 2016) ("It is unclear whether a student's failure to request accommodations via a formal procedure invalidates 'informal' requests for accommodations.")   "Once [a defendant] has established a fixed set of procedures to request accommodations, the plaintiff['s] . . . failure to file a request through this procedure could preclude a claim for failure to accommodate. *Waggel v. Ga. Wash. Univ.*, No. 16-1412, 2018 WL 5886653, at * (D.D.C. Nov. 9, 2018).  Indeed, "where the school has established reasonable procedures

---

[10] *See* (Doc. 53-1) Nguyen Depo. at 145 (Exhibit 36).
[11] *See* (Doc. 53-1) Nguyen Depo. at 145 (Exhibit 36).
[12] (Doc. 57) Response at 15.
[13] (Doc. 53-1) Plaintiff's Depo. at 6, 18, 24-27, 68 (Exh. 1); and 88 (Exh. 14).
[14] (Doc. 53-1) Plaintiff's Depo. at 6, 18, 24-27, 68 (Exh. 1); and 88 (Exh. 14).
[15] (Doc. 53-1) Plaintiff's Depo. at 24 and 28.

for making and handling accommodation requests, it may expect its students to utilize those procedures absent extenuating circumstances." *Young v. Arizona Law School LLC,* No. cv-16-03490-PHX-DJH, 2020 WL 954990, at *8 (D. Ariz. Feb. 27, 2020). Because Plaintiff failed to request accommodations through USA's established procedure, summary judgment should be granted for USA. *See id.* (stating the defendant could only have failed to provide accommodations that the student requested through the school's accommodation request procedure.)

### D. Plaintiff's arguments as to the remaining counts have no basis in fact or law.

As an initial matter, Plaintiff cannot recover emotional distress damages under the Rehabilitation Act or Title III of the ADA or compensatory damages under Title III of the ADA. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022) (Rehabilitation Act); *Hirsch v. Nova Se. Univ.*, No. 04-60068-CIV, 2005 WL 8165239, at *2 (S.D. Fla. May 6, 2005) (ADA).[16] Moreover, in his Response, Plaintiff failed to set forth any record evidence of intentional discrimination. *Jeffery v. Sarasota White Sox. Inc.,* 64 F.3d 590, 593-94 (11th Cir. 1995) ("When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and . . . designate specific facts showing that there is a genuine issue for trial.") Similarly, as to his claim for breach of contract, Plaintiff has not articulated, much less cited to, any record evidence of a material breach.[17] *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (Florida law requires the plaintiff to establish a material breach of the contract and damages resulting from the

---

[16] Plaintiff asserts he is entitled to "monetary relief in the form of compensatory damages" and "emotional damages based on [USA] . . . denying Plaintiff an accommodation." (Doc. 57) Response at 14-15.
[17] *See* (Doc. 57) Response at 15-17.

breach.)  In his Response, Plaintiff asserts that the "undertaker doctrine" applies to his negligence claim but USA is unable to locate any case law to support Plaintiff's assertion, particularly with regard to legal obligations required by the ADA and Rehabilitation Act. *See Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1187 (Fla. 2d DCA 2008) ("where the pharmacist is required by law to provide counseling and information, there is nothing 'voluntary' in the undertaking, so the undertaker doctrine does not apply.")  Moreover, even if USA had a duty to Plaintiff, there is no evidence that USA breached its duty or that Plaintiff suffered bodily injury or property damage as required for a negligence claim.  In addition, Plaintiff, for the first time, alleges negligence regarding his dismissal letter, which is improper.[18]  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")  Finally, Plaintiff asserts there is no qualified privilege but fails to address the fact that the evidence, even when viewed in a light most favorable to Plaintiff, fails to establish publication or damages for Plaintiff's defamation claim.[19]  Based on the foregoing, Plaintiff has failed to establish any genuine issue of material fact for any of his remaining claims and summary judgment should be entered for USA.

## II.    Conclusion

As set forth in Defendant's Motion for Summary Judgment, summary judgment should be granted in favor of USA on all of Plaintiff's claims.

---

[18] (Doc. 57) Response at 18.
[19] *See* (Doc. 52) Defendant's Motion for Summary Judgment at 24-25.

Dated this 23rd day of September, 2022.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT, P.A.

By: _____

Kelly DeGance
Florida Bar No. 0606022
E-mail: kelly.degance@adblegal.com
Samantha Giudici Berdecia
Florida Bar No. 0058667
E-mail: samantha.giudici@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will serve the document by email to the following: Keith Altman and Kimberly Dodson, The Law Office of Keith Altman, 33228 West 12 Mile Road, Suite 375, Farmington Hills, MI 48331 (keithaltman@kaltmanlaw.com) (KimberlyDodson@kaltmanlaw.com).

_____
ATTORNEY