# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

LUKE NGUYEN,

        Plaintiff,

vs.                               Case No.  3:21-cv-173-MMH-MCR

UNIVERSITY OF ST. AUGUSTINE
FOR HEALTH SCIENCES,

        Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment (Doc. 52; Motion), filed August 10, 2022.  Plaintiff Luke Nguyen filed a response in opposition to the Motion.  <u>See</u> Plaintiff's Response to Defendant's Motion for Summary Judgment (52) (Doc. 57; Response), filed September 9, 2022.  Defendant University of St. Augustine for Health Sciences (USAHS) filed a reply.  <u>See</u> Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 58; Reply), filed September 23, 2022.  Accordingly, this matter is ripe for review.

## I.    Background[1]

In the summer of 2016, Nguyen enrolled in the accelerated Doctor of Physical Therapy (DPT) program at the USAHS campus in St. Augustine, Florida.  See Videotaped Deposition of Luke Phuoc Nguyen (Doc. 53-7; Nguyen Dep.) at 5.  When he enrolled, Nguyen received a student handbook setting forth USAHS's policies.  Id.  At the time, he reviewed a paragraph in the handbook informing him that he should contact the student services office to learn how to request reasonable accommodations if needed.  Id. at 6, 68.  In his first trimester, Summer 2016, Nguyen passed all of his courses.  Id. at 6, 71.  In Fall 2016, however, Nguyen withdrew from his courses after experiencing a severe panic attack.  Id. at 7, 71.  On September 19, 2016, a mental health professional diagnosed Nguyen with generalized anxiety disorder (GAD) and attention deficit hyperactivity disorder (ADHD).  Id. at 7–8.  After Nguyen received these diagnoses, his academic advisor Lisa Chase and the accelerated DPT program director Jeff Rot recommended that Nguyen transfer to the "flex" DPT program.  Id. at 8.  Although the flex DPT program took longer to complete, it allowed students to take fewer classes each trimester than the accelerated program.  Id.

---

[1]  Unless otherwise noted, the facts recited herein are undisputed.  For the purposes of resolving the Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Nguyen.  However, the Court notes that these facts may differ from those ultimately proved at trial.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

The Court's citations to page numbers in documents in the record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

at 10. Following Chase and Rot's advice, Nguyen took a leave of absence for the rest of the Fall trimester and transitioned to the flex DPT program in Spring 2017. Id. at 8–9, 38, 73–74. At the time, Nguyen requested no other accommodations. Id. at 9.

In the Spring, Summer, and Fall trimesters of 2017, Nguyen passed his classes but expressed apprehension about his timed examinations. Id. at 10–11, 71. During Summer 2017, Nguyen told his Biomechanics professor that, because of his GAD, he "had concerns about the amount of time that was given" for the examination. Id. at 10–11. The professor recommended that Nguyen practice so that he would be more confident in his knowledge. Id. at 11. Similarly, in Fall 2017, Nguyen informed two professors that he had "concerns" about the practical examinations in his courses. Id. These professors also advised him to practice and study more. Id. According to Nguyen, none of the professors referred him to the disability services office, and he did not know that he could request an accommodation from that office. Id.

In Spring 2018, Nguyen passed his two courses with some difficulty, earning a C+ and a C. Id. at 12, 71. One of those classes was Musculoskeletal I, taught by David Kempfert. Id. at 12. After Nguyen failed a practical examination in the class, Kempfert gave him a retake request form to fill out. Id. On the form, Nguyen stated that the testing conditions "were not fair" because of "noise" and because the professor "was leading answers to the

partner." Id.  Kempfert did not approve the request form and characterized it as unprofessional.  Id.  After meeting with Kempfert and the flex DPT program director Debra Gray, Nguyen believed that the three of them reached an "understanding." Id. at 12–13.  Nguyen then retook the examination but failed "because of time." Id. at 13.  After failing the retake, Nguyen told his examiner, Margaret Wicinski, about his GAD and ADHD.  Id.  Wicinski advised him to practice more.  Id.

USAHS gave Nguyen approval for a second retake of the examination. Id. at 14.  Before the second retake, Nguyen asked Gray and Kempfert whether he could use a sheet of paper and a pencil during his examination.  Id. at 15. Gray and Kempfert did not allow him to have those materials.   Id. Nevertheless, Nguyen passed the second retake and passed the course.  Id. at 14.  In this lawsuit, Nguyen testifies that he wanted a sheet of paper and a pencil because of his GAD and ADHD.  Id. at 15.

In the other class that Nguyen took in Spring 2018, General Therapeutic Exercise, he also had to retake an examination.  Id. at 16.  Before he retook the examination, Nguyen told his instructor, Wicinski, in an email that he was worried about time management on the examination.  Id.  Although Nguyen did not mention his GAD or ADHD in that email, he assumed that Wicinski would connect his time management concerns to a previous conversation about his learning disabilities.  Id.  Nguyen asked Wicinski whether he could have the

most time-consuming skill tested first.  Id. at 16, 77–76.  Wicinski replied that Nguyen could ask the examiner to go in the order Nguyen wanted.  Id.  Nguyen passed the retake.  Id. at 17.  After Nguyen passed the course, Wicinski told him that she still had concerns that he lacked foundational knowledge necessary to succeed in future classes.  Id. at 17, 79–80; Declaration of Dr. Margaret Wicinski (Doc. 53-2; Wicinski Decl.) at 2.  At the time, Nguyen agreed with the assessment.  Nguyen Dep. at 17, 80.  Despite Nguyen's difficulties in Musculoskeletal I and General Therapeutic Exercise, he did not request any accommodations from USAHS's disability services office in Spring 2018.  Id. at 17.  In Summer 2018, Nguyen passed his courses and did not request any accommodations.  Id. at 17, 72.

In Fall 2018, Nguyen passed three of his courses but failed Musculoskeletal II Mock Clinic (Mock Clinic), taught by Wicinski.  Id. at 17–18, 72.  At the beginning of the trimester, Nguyen received and reviewed a syllabus for Mock Clinic.  Id. at 18–19.  The syllabus for Mock Clinic said that the highest grade that could be awarded for a retake of a practical examination was a 75%.  Id. at 19, 87.  The syllabus mandated that there "is expected to be no sharing of information about the practical exams."  Id. at 92.  Like this syllabus, USAHS's student handbook in Fall 2018 prohibited "giving or receiving information about the content of an exam."  Id. at 37, 144.  The syllabus for Mock Clinic also informed the students that they could request accommodations by contacting

staff in the disability services office.  Id. at 19, 88.  Likewise, the student handbook stated that a student must complete the "reasonable accommodation request form" on the online student portal to request an accommodation.  Id. at 37, 145.  The handbook noted that students should expect "to maintain the standards that apply to all University students and request only the accommodations approved by this process."  Id.

On October 27, 2018, Mock Clinic had a midterm in which students performed a physical examination of a simulated patient (another student) and then did written work diagnosing the patient and proposing a treatment plan. Id. at 18, 95.  Only the written work was graded.  Id. at 18; Wicinski Decl. at 3. Because only the written work was graded, USAHS's policy did not allow retakes of the examination.  Wicinski Decl. at 3.  Nguyen misunderstood an instruction that he could not receive help from anyone during the examination. Nguyen Dep. at 18.  As a consequence, Nguyen did not inquire further of the simulated patient while he was performing his written work.  Id.  Nguyen received a 29% on the midterm.  Id. at 19; Wicinski Decl. at 3.  The midterm was worth 25% of the total grade in the class.  Nguyen Dep. at 19, 85; Wicinski Decl. at 2.  According to Wicinski, because of Nguyen's midterm grade and the grade on his unit assignments, Nguyen had to earn a "minimum final grade of 87.4% on the Mock Clinic final exam to pass the course."  Wicinski Decl. at 5.

Near the end of the trimester, Nguyen experienced another panic attack. Nguyen Dep. at 20.  On November 30, 2018, Nguyen asked Wicinski to postpone his final examination, originally scheduled for December 1, until after he saw his primary care physician on December 6.  Id. at 21, 97–98, 102; Wicinski Decl. at 5.  Wicinski granted this request, scheduling the examination for December 8.  Nguyen Dep. at 21–22, 105.  On December 3, Nguyen told Wicinski that he felt better.  Id. at 21.  Three days later, on December 6, Nguyen emailed Wicinski to inform her that his doctors said that he was "okay to continue with school" and that his psychiatrist recommended that he "explore the option of time and a half for examination [sic] in the future."  Id. at 22, 104.  Nguyen said that he was going to research USAHS's requirements for requesting time and a half and discuss time and a half with his psychiatrist during a scheduled appointment on December 10.  Id.

The final examination had two parts: a practical examination of a patient and a written portion in which the student wrote a plan of care for the patient.  Id. at 22–23, 86; Wicinski Decl. at 3.  According to Wicinski, writing the plan of care "immediately following the examination" is an essential requirement of the course because it "mimics the expectation in the clinic."  Wicinski Decl. at 4.  To pass the final examination, a student needed to achieve at least an 80% score on each portion of the examination.  Id.; Nguyen Dep. at 86.

When Nguyen took the final examination on December 8, 2018, he scored a 74% on the practical examination, short of the 80% required to pass. Nguyen Dep. at 23; Wicinski Decl. at 5. Wicinski states that Nguyen asked for his score on the practical examination immediately after completing it and explained to Wicinski that, "if he did not pass, there was no reason to write the plan of care because he would fail the course."[2] Wicinski Decl. at 31. After receiving his grade on the practical examination, Nguyen had an anxiety attack. Nguyen Dep. at 23. He informed Wicinski that he was having an anxiety attack and wanted to speak to his advisor. Id. Wicinski declares that Nguyen "chose not to write the Plan of Care" after learning his score on the practical examination. Wicinski Decl. at 5. According to Wicinski, Nguyen "became emotionally upset" and "slightly argumentative about the feedback he received from his practical." Id. at 31. Because of the panic attack, Nguyen cannot recall exactly what he said to Wicinski after the first portion of the examination. Nguyen Dep. at 23. But he testifies, "I strongly believe that I did not tell them I could not complete the—I would not do that—because I wanted to pass the exam." Id. at 23–24. Because Nguyen did not complete the plan of care, Wicinski awarded him a

---

[2] In an email dated December 11, 2018, Nguyen stated that he could not pass Mock Clinic without passing the final examination on the first attempt. Nguyen Dep. at 107–08. Nguyen now believes that he was incorrect at the time and that he could have passed the course with a final examination score of 75%, the maximum score with the "penalties for the first retake." Id. at 27.

grade of 0% on the written portion of the final.  Wicinski Decl. at 5.
Consequently, Nguyen received an F in Mock Clinic.  Id.

On the week of December 9, 2018, Nguyen attempted to contact USAHS's
disability services office.  Nguyen Dep. at 24.  Nguyen first went to the
administration building at the St. Augustine campus of USAHS and asked for
the disability services office.  Id.  The staff in the administration building sent
Nguyen to another building on campus where an employee gave Nguyen a card
for Ryan Davis, USAHS's manager for student affairs and disability services.
Id.; Declaration of Laura Kauffman (Doc. 53-4; Kauffman Decl.) at 1.  In this
role, Davis was responsible for "identifying and delivering appropriate ADA
accommodations" for students at all of USAHS's campuses.  Kauffman Decl. at
2, 6.  Nguyen called Davis and left a voicemail for him on December 10, 2018.
Nguyen Dep. at 24–25.  When Davis called back, Nguyen explained his
struggles in previous classes and how his professors thought he was unprepared
even though he told them about his learning disabilities and offered them proof
that he was preparing according to their advice.  Id. at 25.  Nguyen explained
that he would likely have a retake of his final examination in Mock Clinic and
asked whether he could get accommodations for that practical examination.  Id.
Davis said he would work on it.  Id.  Nguyen left another voicemail for Davis on
December 10, 2018, referencing their earlier conversation and asking about the
accommodation request form.  Id. at 25–26.  In a December 11, 2018 email,

Davis sent Nguyen a "Reasonable Accommodation Request Form" and a related information sheet.  Id. at 26, 106–11.  Nguyen filled out—but never turned in—the accommodation request form.  Id. at 28.

At some point in December 2018, Nguyen learned from another student in Mock Clinic that Nguyen had misunderstood the directions for the midterm examination and could have received more information from the patient.  Id. at 34.  As a result, Nguyen emailed Wicinski on December 18, 2018, to formally appeal his midterm grade and to ask to complete the "class requirements" for Mock Clinic.  Id. at 30, 114–15.  In the appeal, Nguyen stated that "he did not have enough data to adequately write an effective plan of care" on the midterm examination because he "erroneously deferred muscle length testing and subsequent elongation tissue stress."  Id. at 114.  Nguyen also referred to a "miscommunication of expectations and procedure" that showed that his midterm grade did not reflect his "comprehension and execution of the course requirements."  Id. at 30, 115.  Nguyen said that he "misinterpreted the testing procedures" and did not ask questions of the patient for further relevant information.  Id. at 30, 114.

On December 21, 2018, Wicinski and Jessica Schreiner denied the appeal of the midterm grade.  Id. at 30–31, 116.  Wicinski and Schreiner explained that Nguyen had enough data to complete the midterm successfully but failed because he made an "error in clinical reasoning" and "deferred steps that were

vital for passing the examination." Id. at 30–31, 116.  Nguyen further appealed to Gray.  Id. at 31–32.  On January 11, 2019, Gray also denied the appeal and stated that Nguyen's grade in Mock Clinic "will stand."  Id.  In his emails appealing his midterm grade to Wicinski and Gray, Nguyen never mentioned his ADHD or GAD.  Id.

On December 18, 2018, in addition to appealing his midterm grade, Nguyen verbally asked Wicinski and Gray if he could complete the written portion of his final examination.  Id. at 27, 29.  Gray told him to wait until after the midterm grade appeal was processed.  Id. at 28.  Nguyen testifies that his request to complete the final examination included the understanding that completing the examination allowed the opportunity for a retake.  Id. at 39.  But he did not specifically ask for a "retake" because he never completed the first attempt.  Id. at 28, 39.  At the time, the student handbook said that, to request a retake of a practical examination, "[i]t is the student's responsibility to contact the faculty instructor within one to two business days of failing the exam."  Id. at 38, 222.  In addition, the student handbook required students to "submit a written plan of remediation to the faculty instructor that will effectively prepare the student for their first retake practical examination."  Id. at 222.  Nguyen never submitted a remediation plan for Wicinski's approval.  Id. at 28; Wicinski Decl. at 6.  In Nguyen's experience, typically USAHS or the professor would reach out to schedule a retake.  Nguyen Dep. at 27.  Because of USAHS's retake

policy, the maximum score that Nguyen could have received on a retake of the final examination was a 75%. Id. at 38, 222; Wicinski Decl. at 5. Therefore, according to Wicinski, even if Nguyen had retaken the final examination and gotten a 75%, he could only have gotten a 62% in the course because of his low midterm grade and would not have passed the course. Wicinski Decl. at 6.

The student handbook said that a "student will be dismissed from the program if an F is received in any course." Nguyen Dep. at 38, 153, 225. In accordance with that policy, on December 21, 2018, USAHS dismissed Nguyen from the flex DPT program because of his grade in Mock Clinic. Id. at 32–33, 117. Nguyen appealed his dismissal. Id. at 33, 38.

On January 10, 2019, the academic appeals committee met to consider Nguyen's appeal. Id. at 34. The chair of the committee, Lindsay Perry states that, at the meeting, Nguyen admitted that he "chose not to complete the plan of care due to not having enough points to pass the course." Declaration of Lindsay Perry (Doc. 53-8; Perry Decl.) at 2. Nguyen told the committee about his ongoing discussions with Davis to try to get accommodations for his disabilities. Nguyen Dep. at 35. But Nguyen was informed that "he would not be allowed to have [accommodations] on [practical examinations] due to needing to replicate real-life experiences." Perry Decl. at 9; see also Nguyen Dep. at 28–29 (explaining that Gray told Nguyen that no additional time would be granted for practical examinations). In addition, Nguyen reported to the committee that

his midterm grade appeal had been denied.  Nguyen Dep. at 34.  Nguyen explained that he had appealed after another student told him that he could have gotten more information from his partner.  Id. at 34, 54.  A committee member said that talking to another student about the examination was a violation of academic integrity.  Perry Decl. at 5.  Nguyen admitted that he knew that discussing the practical examination with another student was wrong.  Id. at 9.

The committee unanimously denied Nguyen's appeal and notified him on January 14, 2019.  Nguyen Dep. at 35, 118–19; Perry Decl. at 2–3.  The committee based its decision on several factors:

- Concerns based on display of decreased self-awareness, professional integrity, and academic integrity based on behaviors related to this dismissal.
- Downward trend in academic performance from term to term demonstrating a pattern of being provided with information and advice but not being actionable to make meaningful change in performance.
- Concern for emotional dysregulation as reported in the academic appeal report of argumentative behavior, thus demonstrating unprofessionalism.
- Lack of immediate accepting of responsibility of his own performance leading to dismissal, rather described factors that contributed to the experience.
- Lack of seeking clarification when misunderstanding directions, thus making decisions on assumptions, thus demonstrating lack of proactive and resourceful behaviors.

Perry Decl. at 5–6.  Nguyen did not attempt to appeal the committee's decision to the president of USAHS until February 11, 2019.  Nguyen Dep. at 36. USAHS denied that appeal as untimely.  <u>Id.</u> at 37.

Nguyen initiated this action on February 19, 2021, by filing Plaintiff's Complaint for Violations of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Breach of Contract, Negligence, Defamation (Doc. 1; Complaint).  In Count I of the Complaint, Nguyen alleges that USAHS violated Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 <u>et seq.</u>, because USAHS was aware of Nguyen's disability after November 30, 2018, but did not provide Nguyen with reasonable accommodations.  Complaint ¶¶ 25–26. Nguyen asserts that "[a]s a result of Defendants' failure to implement reasonable accommodations," USAHS violated the ADA by

    a) Failing to recognize that Plaintiff had a disability due to ADHD and GAD.
    b) Failing to enable Plaintiff to file a reasonable accommodation request in a timely manner.
    c) Failing to provide a disability accommodation coordinator for the St. Augustine campus of USA.
    d) Failing to provide Plaintiff with accommodations after learning of Plaintiff's disability.
    e) Denying Plaintiff the equal/same opportunity to receive an education as those without a disability.

<u>Id.</u> ¶ 27.  In addition, Nguyen alleges that USAHS discriminated "by failing to provide a full and equal opportunity to enjoy the services" USAHS provides.  <u>Id.</u>

¶ 28.  In Count II of the Complaint, Nguyen alleges that USAHS violated section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, by failing "to make reasonable accommodations that meet Plaintiff's needs."  Complaint ¶ 38–39.  In Counts III, IV, and V, Nguyen asserts state law claims for breach of contract, negligence, and defamation, respectively.  See id. ¶¶ 41–59.

## II.    Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[3]  An issue is genuine when the evidence is such

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

that a reasonable jury could return a verdict in favor of the nonmovant.  <u>See</u> <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  <u>Kesinger ex rel. Est. of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

In citing to <u>Campbell</u>, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case."). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III.   Discussion

Having carefully reviewed the arguments, record, and applicable law, the Court finds that USAHS's Motion is due to be granted as to Nguyen's federal claims.

### A.   Disability Discrimination

#### 1.   Claims in the Complaint

As an initial matter, the Court must determine what types of ADA and Rehabilitation Act claims Nguyen presents in his Complaint. A discrimination claim under Title III of the ADA or under the Rehabilitation Act "can be based on either a conventional 'disparate treatment' theory, or a theory that the defendant failed to make 'reasonable accommodations,' or both." <u>Forbes v. St.</u>

Thomas Univ., Inc., 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010);[4] see Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).  USAHS asserts that it is "difficult to determine from the allegations in the Complaint if Nguyen alleges both disparate treatment and failure to accommodate claims." Motion at 10.

Although the Court agrees that Nguyen's claims could be clearer, the Court concludes that Nguyen asserts only a failure to provide reasonable accommodations.  In Count I of the Complaint, Nguyen alleges that USAHS violated Title III of the ADA by not providing him with "reasonable accommodations" and that "[a]s a result of Defendants' failure to implement reasonable accommodations," USAHS violated the ADA.  Complaint ¶¶ 26–27. While Nguyen asserts that USAHS denied him the "full and equal opportunity to enjoy the services" USAHS provides, id. ¶ 28, the previous paragraph expressly alleges that "[d]enying Plaintiff the equal/same opportunity to receive an education as those without a disability" is a result of the alleged failure "to implement reasonable accommodations," id. ¶ 27.  Similarly, in Count II, Nguyen alleges that USAHS violated the Rehabilitation Act by failing "to make reasonable accommodations that meet Plaintiff's needs."  Id. ¶ 38.  Moreover,

---

[4]  The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

in Nguyen's Response, he focuses his arguments on the alleged failure to provide reasonable accommodations. See Response at 11–14. Nguyen's sole argument about intentional discrimination is that USAHS was deliberately indifferent in failing to provide accommodations. See id. at 14–15. Therefore, the Court similarly focuses its discussion on whether USAHS violated Title III and the Rehabilitation Act by failing to provide reasonable accommodations.[5]

### 2. Parties' Arguments

USAHS argues that it had no duty to provide reasonable accommodations to Nguyen because he was not a "qualified individual" for the purposes of the DPT program based on his academic performance and unprofessional behaviors. Motion at 14–15. USAHS also contends that it had no duty to affirmatively investigate whether Nguyen needed accommodations because he never requested accommodations before failing Mock Clinic. Id. at 17; Reply at 2–3. Moreover, USAHS asserts that completing the written portion of the Mock Clinic final is not a reasonable accommodation because it would require USAHS to substantially modify its program of study and lower its essential standards.

---

[5] If Nguyen were making a disparate treatment claim about his dismissal from the program, summary judgment would be due to be granted in USAHS's favor on that claim. Nguyen has pointed to no evidence suggesting that USAHS's proffered reasons for dismissing him and for refusing to readmit him were a pretext for discrimination. Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees, 749 F. App'x 776, 783 (11th Cir. 2018) (per curiam) ("Zainulabeddin has not shown that USF's legitimate, non-discriminatory and non-retaliatory reason for her dismissal—poor academic performance—was actually a smokescreen for disability discrimination or retaliation.").

Motion at 18–19.  According to USAHS, it had no duty to grant retroactive accommodations after Nguyen had already failed the examination.  Reply at 4. Finally, USAHS argues that it always had a disability services coordinator for the St. Augustine campus and that Nguyen's failure to use USAHS's system for requesting accommodations is fatal to his claim.  Motion at 20; Reply at 4–6.

In his Response, Nguyen asserts that summary judgment is inappropriate because there is a dispute of fact as to whether USAHS ignored Nguyen's disabilities by failing to advise him that he was required to go to the disability services office to request accommodations.  Response at 11–12. Nguyen represents that he did not know about the disability services office and that he relied on USAHS "to advise him of what course of action to take with his medical disability diagnoses." Id. at 12.  Nguyen argues that USAHS denied his "repeated[]" requests "to be given additional time to take exams" and denied him "a plan for implementing learning and passing based on Plaintiff's disabilities." Id. at 13–14.  Nguyen also maintains that his request for a sheet of paper and pencil during examinations was denied.  Id. at 13.  Nguyen argues that he can show intentional discrimination to obtain compensatory damages because USAHS denied him "an accommodation of more time [and] use of paper and pencil" and because USAHS's professors and administrators failed to tell Nguyen that he was required to go to the disability services office to request an accommodation.  Id. at 14–15.  Finally, Nguyen asserts that USAHS's "policies

and procedures for ADA compliance are deficient and contributed to the miscommunications between Plaintiff, the administration and disability services." Id. at 15.

### 3.    Applicable Law

Title III of the ADA "prohibits discrimination by a 'place of public accommodation,' which is a private entity that offers commercial services to the public." A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc., 900 F.3d 1270, 1289 (11th Cir. 2018) (quoting 42 U.S.C. § 12182(a)).[6]  Similarly, the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The Eleventh Circuit has found that claims under Title III of the ADA and the Rehabilitation Act "are governed by the same substantive standard of liability." Silva v. Baptist Health S. Fla., Inc., 856 F.3d

---

[6]    In the Response, Nguyen cites to section 309 of the ADA, which governs "examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes."  42 U.S.C. § 12189; see Response at 12.  Section 309 may implicate a different legal standard from the rest of Title III.  See Albert v. Ass'n of Certified Anti-Money Laundering Specialists, LLC, No. 21-12333, 2022 WL 1415867, at *2 (11th Cir. May 4, 2022) (per curiam).  While USAHS plainly is a "postgraduate private school" covered by the main provisions of Title III, 42 U.S.C. § 12181(7)(J), the Court questions whether USAHS's program meets the specific definition in section 309.  For that reason and because Nguyen does not specifically bring his claim under section 309 in the Complaint, the Court will analyze Nguyen's claim under the normal Title III standards.

824, 830–31 (11th Cir. 2017).[7]  "To prevail, a disabled person must prove that he . . . was excluded from participation in or denied the benefits of the [school's] services, programs, or activities, or otherwise was discriminated against on account of [his] disability."[8]  Id.

Under Title III, discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).  However, this failure to make modifications is not discriminatory if the "entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."  Id.  Accordingly, it is the plaintiff's burden to prove "not only that he is disabled but also that his requested modification is both 'reasonable' and 'necessary.'"  A.L., 900 F.3d at 1292.  The defendant "bears the burden of proof on the fundamental alteration inquiry."  Id.

---

[7]  Although Title III of the ADA and the Rehabilitation Act have important differences, those differences are not relevant here.  See Schwarz, 544 F.3d at 1212 n.6.  Compare A.L., 900 F.3d at 1290 ("Title III provides for only injunctive relief."), with Silva, 856 F.3d at 831 (noting in a case with a Rehabilitation Act claim that a plaintiff could recover damages if the defendant was "deliberately indifferent to her federally protected rights").

[8]  For the purposes of resolving the Motion, USAHS does not dispute that Nguyen is disabled.  See Motion at 10 n.74.  The parties also do not dispute that USAHS is a "place of public accommodation" covered by the ADA and a "program or activity receiving Federal financial assistance" under the Rehabilitation Act.  42 U.S.C. § 12181(7)(J); 29 U.S.C. § 794(b)(2)(A).

Similarly, under the Rehabilitation Act, "[i]n certain circumstances, an educational institution's refusal to accommodate the needs of a disabled person amounts to discrimination against that person because of his disability." Goldberg v. Fla. Int'l Univ., 838 F. App'x 487, 492 (11th Cir. 2020) (per curiam); J.A.M. v. Nova Se. Univ., Inc., 646 F. App'x 921, 926 (11th Cir. 2016) (per curiam). But, like Title III, "the Rehabilitation Act 'imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person.'" Goldberg, 838 F. App'x at 492 (quoting Se. Cmty. Coll. v. Davis, 442 U.S. 397, 413 (1979)); J.A.M., 646 F. App'x at 926 (quoting Davis, 442 U.S. at 413). Indeed, a "professional school's unwillingness to make 'major adjustments' to its program to accommodate the disabled does not constitute disability discrimination." Goldberg, 838 F. App'x at 492; see J.A.M., 646 F. App'x at 926–27.

Notably, under both statutes, the "plaintiff bears the burden of identifying a reasonable accommodation." Goldberg, 838 F. App'x at 492. Moreover, "the duty to provide a reasonable accommodation under the Rehabilitation Act and ADA is not triggered 'unless a specific demand for an accommodation has been made.'" Id. (quoting Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999)); see Perez ex rel. F.V. v. Lake Cnty. Rowing Ass'n, No. 21-10352, 2021 WL 4545090, at *4 (11th Cir. Oct. 5, 2021) (per curiam); Zainulabeddin, 749 F. App'x at 783–84.

####     4.     Analysis

Nguyen asserts that USAHS should have given him the accommodations of (1) additional time on examinations and (2) a blank sheet of paper and a pencil during practical examinations.  Nguyen Dep. at 43–44; Response at 15.  With regard to additional time on examinations, the Court concludes that this claim fails because Nguyen never requested that accommodation.  Although Nguyen argues that he "repeatedly" asked his professors for additional time, Response at 13, the record does not support that assertion.  Nguyen admits that, before December 6, 2018, he had not spoken to anyone at USAHS about getting time and a half on his examinations.  Nguyen Dep. at 22.  During his program at USAHS, Nguyen informed his professors of his concerns about time management on examinations.  Id. at 10–11, 13, 16.  Sometimes he linked that concern to his diagnoses.  Id. at 10–11, 13.  Sometimes he did not.  Id. at 11, 16.  Although he mentioned these concerns, Nguyen never asked for additional time.[9]  Nguyen seems to complain that his professors responded by giving him advice on how to study and practice so that he could get faster.  Id. at 11, 13.  However, when Nguyen received this advice, he usually did not express that more time would be necessary, nor did he try to explain to his professors that

---

[9]  For one examination, Nguyen asked whether he could have the most time-consuming skill tested first.  Id. at 16, 76–77.  Wicinski replied that Nguyen could ask the examiner to go in the order Nguyen wanted.  Id.  Nguyen has not produced evidence about whether he asked his examiner for a certain testing order and, if so, whether the request was granted.

the need for more practice was not the problem.  Id.  On one occasion in Spring 2018, Nguyen told Wicinski that he was already doing the practice strategies that she suggested.  Id. at 13–14.  However, in that conversation, Nguyen never suggested that he needed anything other than academic advice.  See id.

Even on December 6, 2018, Nguyen did not ask for additional time on his Mock Clinic final.  In his email to Wicinski on December 6, Nguyen said that his psychiatrist recommended that he "explore the option of time and a half for examination [sic] in the future."  Id. at 22, 104.  Nguyen told Wicinski that he was going to discuss time and a half with his psychiatrist during a scheduled appointment on December 10, two days after the final examination scheduled for December 8.  Id.  Therefore, the statement that Nguyen should "explore the option" was not an affirmative request for an accommodation on the December 8 examination.   See Zainulabeddin, 749 F. App'x at 778–79, 783 n.7 ("Zainulabeddin's earlier question to Dr. Specter about taking a leave of absence cannot reasonably be construed as a request for an accommodation because she did not clearly request a leave of absence and did not feel that she needed a leave of absence at that time.").   Because Nguyen never requested the accommodation of extra time, USAHS had no duty to provide him with it.  See Goldberg, 838 F. App'x at 492; Perez, 2021 WL 4545090, at *4.

Nguyen also asserts that USAHS wrongfully denied his request in Spring 2018 for a paper and pencil during practical examinations.  Response at 5, 15.

First, the Court finds that this accommodation is not properly before the Court because in the Complaint Nguyen does not allege the denial of this accommodation or allege any wrongdoing before Fall 2018. See Goldberg, 838 F. App'x at 492 ("As an initial matter, while his brief lists numerous requests and denials that occurred throughout his time at the medical school, his complaint alleged only two . . . ." (footnote omitted)). Second, Nguyen presents no evidence that he told Gray and Kempfert that he wanted the materials because of his disabilities. See Nguyen Dep. at 15. Third, Nguyen has not pointed to evidence suggesting that the proposed accommodation was necessary, especially because Nguyen passed Musculoskeletal I without those materials and because Nguyen never again asked for them. Consequently, the Court concludes that Nguyen has presented no evidence that USAHS wrongfully denied his requested accommodations.

Nguyen suggests that USAHS had a duty to investigate whether he needed accommodations based on its knowledge of his diagnoses. See Response at 11–12. To the extent Nguyen makes this assertion, it is unavailing under the facts here.[10] Nguyen "confuses the party upon whose burden it rests to

---

[10] Nguyen cites to cases in the primary and secondary special education context to argue that USAHS ignored Nguyen and denied him a "plan for implementing learning and passing based on Plaintiff's disabilities." Id. at 11–13. These cases are inapplicable to Nguyen's claim because the Rehabilitation Act "has taken on a unique meaning in the special education context" where federal regulations require public elementary and secondary schools to "identify and locate" disabled students and evaluate students "who need or are suspected to need" special education services. Mrs. H. v. Montgomery Cnty. Bd. of Educ., 784 F. Supp.

investigate and provide options for accommodations." Perez, 2021 WL 4545090, at *4.  USAHS had no obligation to provide a reasonable accommodation until Nguyen met his "burden of identifying an accommodation and demonstrating that it is reasonable." Id. (quoting Frazier-White v. Gee, 818 F.3d 1249, 1255–56 (11th Cir. 2016)); see Goldberg, 838 F. App'x at 492 n.2 ("Included among these 'denials' are multiple accommodations that Goldberg indisputably did not request, but that he now argues the medical school should have known he needed.  Of course, the duty to provide reasonable accommodations does not arise until a specific request is made.").

Nguyen argues that his professors should have told him that he needed to make an accommodation request through USAHS's disability services office. Response at 12.  However, the undisputed evidence is that USAHS informed Nguyen that he was required to ask for accommodations through the disability services office.  When he enrolled, Nguyen received a student handbook with USAHS's policies regarding students.  Nguyen Dep. at 5.  Nguyen reviewed a paragraph in the handbook informing him that he should contact the student services office to learn how to request reasonable accommodations if needed.  Id. at 6.  The student handbook available to Nguyen in Fall 2018 stated that a

---

2d 1247, 1260, 1262 (M.D. Ala. 2011) (quoting 34 C.F.R. § 104.32); see also J.S.R. by Childs v. Dale Cnty. Bd. of Educ., No. 1:13-CV-582-WKW, 2015 WL 5692804, at *10 (M.D. Ala. Sept. 28, 2015) (noting in a special education case that the same standards apply in Rehabilitation Act and Title II ADA cases).  Nguyen has not demonstrated that this "unique" meaning applies to him, an adult plaintiff in a professional degree program.

student must complete the "reasonable accommodation request form" on the online student portal to request an accommodation.  Id. at 37, 145.  The handbook also said that students should expect "to maintain the standards that apply to all University students and request only the accommodations approved by this process."  Id.  In addition, in the syllabus for Mock Clinic in Fall 2018, Wicinski informed the students that they could request accommodations by contacting staff in the disability services office.  Id. at 18–19, 88.  Nguyen reviewed the syllabus when he received it.  Id. at 19.  Indeed, on the week of December 9, 2018, when Nguyen asked for the disability services office, USAHS staff gave Nguyen the contact information for the disability services officer, Davis.  Id. at 24; Kauffman Decl. at 1. Nguyen then spoke with Davis the next day.  Nguyen Dep. at 24–25.  Thus, to the extent that Nguyen relied on USAHS "to advise him of what course of action to take with his medical disability diagnoses," Response at 12, the Court concludes that USAHS did advise him on how to request accommodations.  See Chenari v. George Washington Univ., 847 F.3d 740, 748–49 (D.C. Cir. 2017) (concluding that the defendant University "did offer Chenari an accommodation" when "the University not only twice offered Chenari counseling, but also, through its Disability Office and that office's website, offered all students a procedure for obtaining any reasonable accommodation they might need").

The Court also finds that Nguyen has not pointed to evidence that he was entitled to accommodations after failing his Mock Clinic class.  First, Nguyen asked for his midterm grade in Mock Clinic to be changed.  Nguyen Dep. at 30.  But Nguyen did not fail his midterm because of his disability.  On the midterm examination, Nguyen admits he failed because he misunderstood the instructions and because he decided not to perform certain procedures after making an error in clinical judgment.  Id. at 18, 30–31, 114–16.  Therefore, USAHS had no obligation to provide him another chance.  See Ellis v. Morehouse Sch. of Med., 925 F. Supp. 1529, 1547 (N.D. Ga. 1996) (finding that the defendant "had no responsibility to reasonably accommodate" the plaintiff's performance problems when the problems "were not related" to the plaintiff's disability); cf. Siefken v. Village of Arlington Heights, 65 F.3d 664, 666–67 (7th Cir. 1995) (finding in an ADA Title I case that a "second chance" is not a required accommodation).

Second, Nguyen asked to complete his final examination in Mock Clinic.  Nguyen Dep. at 27, 29.  However, USAHS has produced unrebutted evidence that allowing Nguyen to complete the second portion of the final examination weeks later would be a fundamental alteration of the academic program because the lengthy delay would not simulate conditions in clinical practice.  See Wicinski Decl. at 4.  USAHS had no duty to implement an accommodation

that would fundamentally alter the program.  See Goldberg, 838 F. App'x at 492; J.A.M., 646 F. App'x at 925–27.

Third, while Nguyen now believes that he should have been allowed to retake the final examination, Nguyen Dep. at 38–39, he never asked to retake the final examination and did not follow the school's process for requesting a retake.  Id. at 28, 39; Wicinski Decl. at 6.  Because Nguyen did not ask for this accommodation, USAHS was not required to give it to him.  See Goldberg, 838 F. App'x at 492; Perez, 2021 WL 4545090, at *4.  Moreover, Nguyen could not have passed the course by retaking his final examination because of the mandatory limit on the grade of a retaken examination.  See Wicinski Decl. at 6; Nguyen Dep. at 38, 222.  As such, retaking the final examination was not a reasonable accommodation.

Fourth, Nguyen asked to be readmitted to the DPT program.  Nguyen Dep. at 33, 38.  Nguyen has presented no evidence to rebut the substance of any of the several reasons that the academic appeals committee gave for not readmitting him.  Perry Decl. at 5–6.  Because Nguyen no longer met the academic and professional requirements for the DPT program, allowing him to continue in the program would not be a reasonable accommodation.  The ADA and the Rehabilitation Act do not require USAHS to fundamentally alter its program to accommodate Nguyen.  See Goldberg, 838 F. App'x at 493; J.A.M., 646 F. App'x at 925–27; Forbes, 768 F. Supp. 2d at 1232–33.

In sum, Nguyen has not identified any evidence raising an inference that USAHS wrongfully failed to provide reasonable accommodations.  Thus, the Court finds that USAHS's Motion is due to be granted as to Counts I and II.

## B.    State Law Claims

The Court must next consider whether to continue to exercise supplemental jurisdiction over Nguyen's state law claims for breach of contract, negligence, and defamation in Counts III–V.  At the time the instant case was filed, the Court had original jurisdiction over the federal claims, see 28 U.S.C. § 1331, as well as supplemental jurisdiction over Nguyen's state law claims pursuant to 28 U.S.C. § 1367(a).  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  However, § 1367(c)(3) gives a court discretion to dismiss or remand to state court claims before it on the basis of supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Indeed, the Eleventh Circuit has held that a district court may properly decline to exercise jurisdiction over supplemental state law claims when the federal claims over which the Court had original jurisdiction are dismissed on a motion for summary judgment, as is the case here.  See Murphy v. Fla. Keys Elec. Co-op Ass'n, Inc., 329 F.3d 1311, 1320 (11th Cir. 2003) (affirming summary judgment on defendant's contribution claim invoking admiralty jurisdiction, and affirming dismissal of third-party defendant's state law counterclaim under 28 U.S.C. § 1367(c)); Graham v. State

Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3)."); Eubanks v. Gerwen, 40 F.3d 1157, 1162 (11th Cir. 1994) (stating that since the "federal claims [had] been disposed of rather early on at the summary judgment phase[,] . . . comity suggests that the remaining state law malicious prosecution claim should be heard in state court"); see also Maschmeier v. Scott, 508 F. Supp. 2d 1180, 1185–86 (M.D. Fla. 2007) (declining to exercise supplemental jurisdiction over the plaintiff's state law claim after granting summary judgment in favor of the defendant on the plaintiff's federal claims).

In deciding whether to exercise supplemental jurisdiction over state law claims, district courts consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims," as well as "the values of judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) (internal quotations omitted) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[W]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Cohill, 484 U.S. at 350

(footnote omitted) (citing <u>Gibbs</u>, 383 U.S. at 726–27); <u>Gibbs</u>, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); <u>see also</u> <u>Raney v. Allstate Ins. Co.</u>, 370 F.3d 1086, 1089 (11th Cir. 2004) (stating that the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial" (citing <u>L.A. Draper & Son v. Wheelabrator-Frye, Inc.</u>, 735 F.2d 414, 428 (11th Cir. 1984))).  Notably, the Supreme Court's directive in <u>Cohill</u> concerning when a district court should decline to continue to exercise supplemental jurisdiction did not "'establish a mandatory rule to be applied inflexibly in all cases,'" but "it did establish a general rule to be applied in all but extraordinary cases."  <u>Carr v. Tatangelo</u>, 156 F. Supp. 2d 1369, 1380 (M.D. Ga. 2001) (citing <u>Cohill</u>, 484 U.S. at 350 n.7), <u>aff'd</u>, 338 F.3d 1259 (11th Cir. 2003).  Moreover, because "[s]tate courts, not federal courts, should be the final arbiters of state law," dismissal of state law claims is strongly encouraged when federal claims are dismissed prior to trial.  <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1353 (11th Cir. 1997).

Here, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over Nguyen's state law claims.  The Court has concluded that summary judgment is due to be granted in favor of USAHS on Nguyen's federal claims.  What remains are uniquely state law claims that are

best addressed by the state courts.  When, as here, a plaintiff's federal claims are eliminated prior to trial, district courts are encouraged "to dismiss any remaining state claims."  <u>Murphy v. City of Aventura</u>, 383 F. App'x 915, 919 (11th Cir. 2010) (citing <u>Raney</u>, 370 F.3d at 1089) (affirming dismissal of state law claims following entry of summary judgment against plaintiff on the federal employment law claims, and noting that the court, the Eleventh Circuit, encourages district courts to take such action); <u>see also</u> <u>Cohill</u>, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Therefore, the Court declines to continue to exercise supplemental jurisdiction over Nguyen's claims in Counts III–V.[11]  Those counts are due to be dismissed without prejudice.

---

[11] The Court notes that Nguyen will suffer no harm from the Court's decision to decline supplemental jurisdiction because federal law provides for the tolling of the state limitations period while a state claim is pending in federal court.  Specifically, 28 U.S.C. § 1367(d) provides that:

> [t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

As such, even if the statute of limitations has otherwise run on Nguyen's state law claims, Nguyen has at least thirty days to refile his claims in state court.  See <u>Dukes v. Georgia</u>, 212

## IV.    Conclusion

The Court will grant summary judgment in favor of USAHS and against Nguyen on Counts I and II of the Complaint.  The Court declines to continue to exercise supplemental jurisdiction over the state law claims in Counts III–V.

Accordingly, it is

**ORDERED:**

1.    Defendant's Motion for Summary Judgment (Doc. 52) is **GRANTED, in part**, and **DENIED, in part**.

    A.    The Motion is **GRANTED** with respect to Counts I and II, and the Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant and against Plaintiff as to these counts.

    B.    The Motion is **DENIED** as to Counts III–V.  In its discretion under 28 U.S.C. § 1367(c), the Court declines to continue to exercise jurisdiction over Plaintiff's claims in Counts III–V, and Counts III–V are **DISMISSED without prejudice** to Plaintiff refiling these claims in state court if he so chooses.

---

F. App'x 916, 917–18 (11th Cir. 2006); <u>Dusek v. JPMorgan Chase & Co.</u>, 132 F. Supp. 3d 1330, 1354 n.18 (M.D. Fla. 2015).

2.     The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on March 6, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record
Pro Se Parties